<u>**AFFIDAVIT OF CAROL BLEVINS**</u>

STATE OF ___W I___          §
                            §
COUNTY OF _Marathon_        §

Before me, the undersigned notary, on this day personally appeared Carol Blevins, a person whose identify is known to me. After I administered an oath to her, upon her oath she said:

1.      My name is Carol Blevins. I am over the age of 18 and otherwise competent to make this affidavit. I have personal knowledge of the facts stated in this affidavit and they are true and correct.

2.      I was Kirk Jenkins' teacher in the Montessori School of Wausau, WI, throughout his Preschool and Kindergarten years.

3.      Kirk was a well-mannered, thoughtful child who excelled in the learning experience Montessori offers. He showed above average enthusiasm and intelligence in all areas of classroom activities, and was one of the leaders in my class.

4.      However, when teaching him beginning reading skills, I began to notice some problems and eventual frustration from him. I questioned why be would have such difficulty learning names of letters and associating the letters with their sounds, when all of his other skills were above average. I subsequently spoke with his parents, and relayed my suspicion that he may have dyslexia. Kirk's parents were very supportive of my findings, and shared with me the fact that other family members were dyslexic. Because dyslexia is hereditary, this helped to confirm my suspicions. His parents and I felt that due to his young age and substantial support from both home and school, we would not have any professional testing done at this point. We decided to work one-on-one with Kirk and provide him with a strong phonic foundation. This

EXHIBIT

1

strategy was strongly recommended then and currently even today remains essential for dyslexics learning to read.

5.     As Montessori methodology allows for individual student exploration and choice, Kirk was able to spend long periods of time with me learning to read with the Phonics system. He was very aware that other children in the classroom were reading at a higher level than he was.  In a Montessori classroom, there are mixed ages.  Kirk's best friend in school was one year younger than he, and was quite far ahead of him in the series of phonics books and reading materials that we used. Kirk was extremely frustrated.  It took a substantial amount of additional one-on-one work to get him to become willing to combat his impairment.  In the one-on-one format only with significant positive reinforcement did he become willing to spend extra time working towards learning to read.  This often took place during recess and even after school.  I spent individual time with Kirk daily to help him read more fluently.  I was also in contact with his mother often, in order to coordinate her efforts to work with him in the home.

6.     The combination of intense individual attention at school and at home working on phonemes and decoding helped Kirk realize incremental improvements in reading. I have worked with many young children, some of whom also had learning disabilities or difficulties. The further we progressed, the more apparent it became that Kirk showed additional traits of dyslexia-difficulty decoding single words, inaccurate and labored oral reading, slow reading, and difficulty learning the letters of the alphabet and names of numbers.  His progress also reinforced that we had made the right decision to offer additional work in phonologic skills. Understand that Kirk did not suddenly become a good reader; he experienced incremental improvements through the additional reading sessions he and I worked through together that inspired him to continue. After leaving kindergarten his reading fluency was still significantly compromised, yet his

brightness and perseverance allowed enough comprehension that he was not "turned off" from reading and learning.

7.      Meeting Kirk again as a young man, I realize he still has the energy and drive to succeed against great odds. We as educators and life trainers must do all we can to help in this struggle, as it is those who have seen failure and still excel who become the compassionate men and women of our time.

_____
Affiant

SWORN   TO   and   SUBSCRIBED   BEFORE   ME   on   this   _13_   day   of _____Nov_____, 2007.

_____
Notary   Public   in   and   for   the   State   of _Wisconsin_

My Commission Expires: _May 30, 2010_



July 6, 2007

NBME Disability Services
3750 Market Street
Philadelphia, PA 19104

To Whom It May Concern,

I was Kirk Jenkins' teacher in the Montessori School of Wausau, WI, throughout his
Preschool and Kindergarten years.

Kirk was a well-mannered, thoughtful child who excelled in the learning experience
Montessori offers. He showed above average enthusiasm and intelligence in all areas of
classroom activities, and was one of the leaders in my class.

However, when teaching him beginning reading skills, I began to notice some problems
and eventual frustration from him. I questioned why he would have such difficulty
learning names of letters and associating the letters with their sounds, when all of his
other skills were above average. I subsequently spoke with his parents, and relayed my
suspicion that he may have dyslexia. Kirk's parents were very supportive of my findings,
and shared with me the fact that other family members were dyslexic. Because dyslexia
is hereditary, this helped to confirm my suspicions. His parents and I felt that due to his
young age and substantial support from both home and school, we would not have any
professional testing done at this point. We decided to work one-on-one with Kirk and
provide him with a strong phonic foundation. This strategy was strongly recommended
then and currently even today remains essential for dyslexics learning to read.

As Montessori methodology allows for individual student exploration and choice, Kirk
was able to spend long periods of time with me learning to read with the Phonics system.
He was very aware that other children in the classroom were reading at a higher level
than he was. In a Montessori classroom, there are mixed ages. Kirk's best friend in
school was one year younger than he, and was quite far ahead of him in the series of
phonics books and reading materials that we used. Kirk was extremely frustrated. It took
a substantial amount of additional one-on-one work to get him to become willing to
combat his impairment. In the one-on-one format only with significant positive
reinforcement did he become willing to spend extra time working towards learning to
read. This often took place during recess and even after school. I spent individual time
with Kirk daily to help him read more fluently. I was also in contact with his mother
often, in order to coordinate her efforts to work with him in the home.

The combination of intense individual attention at school and at home working on
phonemes and decoding helped Kirk realize incremental improvements in reading. I
have worked with many young children, some of whom also had learning disabilities or
difficulties. The further we progressed, the more apparent it became that Kirk showed
additional traits of dyslexia—difficulty decoding single words, inaccurate and labored
oral reading, slow reading, and difficulty learning the letters of the alphabet and names of

numbers. His progress also reinforced that we had made the right decision to offer additional work in phonologic skills. Understand that Kirk did not suddenly become a good reader; he experienced incremental improvements through the additional reading sessions he and I worked through together that inspired him to continue. After leaving kindergarten his reading fluency was still significantly compromised, yet his brightness and perseverance allowed enough comprehension that he was not "turned off" from reading and learning.

Meeting Kirk again as a young man, I realize he still has the energy and drive to succeed against great odds. We as educators and life trainers must do all we can to help in this struggle, as it is those who have seen failure and still excel who become the compassionate men and women of our time.

Sincerely,

Carol Blevins

Carol Blevins

6800 Green Valley Road

Wausau, WI   54401

715-675-3499

zennie1@peoplepc.com

## AFFIDAVIT OF MICHAEL GONTARZ

STATE OF W ISCONSIN          §
                             §
COUNTY OF MARATHON           §

Before me, the undersigned notary, on this day personally appeared Michael Gontarz, a person whose identify is known to me.  After I administered an oath to him, upon his oath he said:

1.      My name is Michael Gontarz.  I am over the age of 18 and otherwise competent to make this affidavit.  I have personal knowledge of the facts stated in this affidavit and they are true and correct.

2.      I was the school district psychologist at the time of Kirk's referral for a special education evaluation in 1991 when he was a third grader. The reason for Kirk's referral was that his severe academic problems in spelling, written language, and reading substantially limited his daily progress. State and federal laws at the time of Kirk's evaluation required the IEP (Individual Educational Plan) team to determine whether there was a discrepancy between his expected achievement based upon overall cognitive abilities and his actual achievement functioning.

3.      Kirk's evaluation results clearly indicated severe deficits in written language and spelling and, to some degree, reading. A person's demonstrated superior intelligence does not eliminate his/her eligibility for being considered learning disabled.  While Kirk was found to have superior overall intellectual abilities, he was also found to have academic skills that were substantially below (more than 1.5 standard deviations below the mean) what can be expected based upon his cognitive performance.  However, just showing a discrepancy between cognitive and functional academic achievement is not the only issue the IEP team considered. In such

EXHIBIT

tabbies®

2

cases the IEP team also considers if the student's deficits significantly limit him/her from adequately performing in the classroom. In Kirk's case, the IEP team not only found him to be academically functioning far below expected levels given his excellent cognitive skills, but also found him to be substantially struggling in daily performance.

4.      It should also be noted that the entire "IEP team" (not just one evaluator) legally determines a severe learning disability.  Kirk's IEP team included a psychologist, a learning disability specialist, a principal, and classroom teachers.   Daily classroom performance, evaluation results, developmental history, and medical and family factors are all considered in making such a decision.  The particular team that evaluated Kirk's assessment results and made a determination of his eligibility for a severe learning impairment had significant years of experience evaluating and working with children who have learning disabilities.  In addition, every educational and clinical psychologist and IEP team who have evaluated Kirk the past 16 years have substantiated the fact that Kirk is indeed learning impaired and in need of learning accommodations.

5.      After the 1991 IEP team determined that Kirk did indeed have a learning disability, the team then developed an IEP that specifically provided Kirk special assistance. This special assistance was in the form of direct services for written language and spelling as those were the areas that were most impaired.  The main issue with Kirk's learning profile was that he had significantly high intelligence and knowledge, but had severe difficulty fluently and efficiently expressing these skills in daily work.  His case is very similar to a person who has super intelligence/cognitive functioning, but who has expressive speech problems.  If given ample time, the person with the speech impediment can verbally express the cognitive and academic skills he/she has. However, if not given the accommodation of extra time to express

oneself, the listener may inappropriately label the speaker as being less intelligent than what he/she is.  Kirk's profile indicates he has the superior cognitive skills to achieve.  He certainly has the drive, motivation, and courage to help overcome any challenges that will hinder the performance of such skills.   However, much like a person who has an expressive speech disorder, Kirk requires more receptive time to acquire/process the information being presented.  Having substantially limited reading or writing fluency certainly does not mean that Kirk would not make an excellent physician.  Given Kirk's educational history of learning disabilities, yet given his high motivation to overcome these impairments, achieve high school and college graduation, and successful completion of two years of medical school, would indicate that he has the "right stuff" to make a very well respected physician.

_____
Affiant

SWORN   TO   and   SUBSCRIBED   BEFORE   ME   on   this   _19th_   day   of _November_____, 2007.

_____
Notary  Public  in  and  for  the  State  of _Wisconsin_

My Commission Expires:  _05·23·10_

# DC Everest Area Schools
### 6300 Alderson Street, Schofield, WI 54476
**715-359-355-0302 X5825**

July 2, 2007

Disability Services
National Board of Medical Examiners
3750 Market Street
Philadelphia, PA 19104-3190

Dear Board Members,

I am writing this letter in support of Kirk Jenkins who has requested test accommodations for the United States Medical Licensing Examination (USMLE) Step 1. I am under the impression that your board indicated that Kirk did not have a substantial limited leaning impairment that would require such accommodations. This letter is to substantiate that Kirk Jenkins did indeed meet eligibility requirements for a severe learning disability under state and federal laws in 1991 and has been receiving learning accommodations for those impairments throughout his educational career.

I was the district psychologist at the time of Kirk's referral for a special education evaluation in 1991 when he was a third grader. The reason for Kirk's referral was that his severe academic problems in spelling, written language, and reading substantially limited his daily progress. State and federal laws at the time of Kirk's evaluation required the IEP (Individual Educational Plan) team to determine whether there was a discrepancy between his expected achievement based upon overall cognitive abilities and his actual achievement functioning.

Kirk's evaluation results clearly indicated severe deficits in written language and spelling and, to some degree, reading. Please know that a person's demonstrated superior intelligence does not eliminate his/her eligibility for being considered learning disabled. While Kirk was found to have superior overall intellectual abilities, he was also found to have academic skills that were substantially below (more than 1.5 standard deviations below the mean) what can be expected based upon his cognitive performance. However, just showing a discrepancy between cognitive and functional academic achievement is not the only issue the IEP team considered. In such cases the IEP team also considers if the student's deficits significantly limit him/her from adequately performing in the classroom. In Kirk's case, the IEP team not only found him to be academically functioning far below expected levels given his excellent cognitive skills, but also found him to be substantially struggling in daily performance.

It should also be noted that the entire "IEP team" (not just one evaluator) legally determines a severe learning disability. Kirk's IEP team included a psychologist, a learning disability specialist, a principal, and classroom teachers. Daily classroom performance, evaluation results, developmental history, and medical and family factors are all considered in making such a decision. The particular team that evaluated Kirk's assessment results and made a determination of his eligibility for a severe learning impairment had significant years of experience evaluating and working with children who have learning disabilities. In addition, every educational and clinical psychologist and IEP team who have evaluated Kirk the past 16 years have substantiated the fact that Kirk is indeed learning impaired and in need of learning accommodations.

I am aware that the medical community has different guidelines in what determines a learning disability. One scenario that the educational system frequently encounters is when children are "identified" by a medical facility as learning disabled, yet are no where near the state and federal educational eligibility requirements for special education (thus not considered severely disabled). However, rarely, if ever, have we encountered a situation where the student has clearly been identified as learning impaired throughout his educational career, but not considered as such by a medical professional or board. In order for a student to be considered eligible for special education services, the child must meet the state and federal LEGAL eligibility requirements not just DSM IV criteria. Therefore, for the board to state that Kirk does not have a substantial learning impairment and is not in need of accomodations runs contrary to what all educational and clinical professionals have documented for 16 years.

After the 1991 IEP team determined that Kirk does indeed have a learning disability, the team then developed an IEP that specifically provided Kirk special assistance. This special assistance was in the form of direct services for written language and spelling as those were the areas that were most impaired. The main issue with Kirk's learning profile was that he had significantly high intelligence and knowledge, but had severe difficulty fluently and efficiently expressing these skills in daily work. His case is very similar to a person who has super intelligence/cognitive functioning, but who has expressive speech problems. If given ample time, the person with the speech impediment can verbally express the cognitive and academic skills he/she has. However, if not given the accommodation of extra time to express oneself, the listener may inappropriately label the speaker as being less intelligent than what he/she is. Kirk's profile indicates he has the superior cognitive skills to achieve. He certainly has the drive, motivation, and courage to help overcome any challenges that will hinder the performance of such skills. However, much like a person who has an expressive speech disorder, Kirk requires more receptive time to acquire/process the information being presented. Having substantially limited reading or writing fluency certainly does not mean that Kirk would not make an excellent physician. Given Kirk's educational history of learning disabilities, yet given his high motivation to overcome these impairments, achieve high school and college graduation, and successfully complete two years of medical school, would indicate that he has the "right stuff" to make a very well respected physician. He knows what suffering is. He personally knows about battling all the odds. Those are personal elements that add to the overall character of a great physician. Please do not limit a fine, talented person the opportunity to become a significant physician in the field of medicine. Given his history of learning impairments, Kirk deserves to take the Step 1 examination with limited accommodations.

I appreciate the board's willingness to read my letter and am hopeful that you will give this fine young man the chance of becoming an outstanding physician so that he can in turn serve all of us.

Most respectfully,

Michael Gontarz, EdD, NCSP, LCP
Nationally Certified School/Educational Psychologist (NASP #102820)
Licensed Private Practice School Psychologist (WI #284-058)
Licensed Professional Counselor (WI #2363-125)

mgontarz@dce.k12.wi.us

2

## BUSINESS RECORDS AFFIDAVIT

**STATE OF** Wisconsin      §
                        §
**COUNTY OF** Marathon    §

     BEFORE ME, the undersigned authority, personally appeared Trudy DeSimons who, being by me duly sworn, stated as follows:

     My name is Trudy DeSimons, I am over twenty-one (21) years of age, of sound mind, capable of making this affidavit, and have knowledge of the facts herein stated.

     I am the custodian of the records of <u>D.C. Everest Area School District</u>. Attached hereto are <u>13</u> pages of records from <u>D.C. Everest Area School District</u>, regarding <u>Kirk D. Jenkins</u>. These said <u>13</u> pages of records are kept by the said <u>custodian of records</u> in the regular course of business, and it was the regular course of business of <u>D.C. Everest Area School District</u> for an employee or representative of the <u>D.C. Everest Area School District</u> with knowledge of the act, event, condition, or opinion recorded to make the memorandum or record or to transmit information thereof to be included in such memorandum or record; and the memorandum or record was made at or near the time of the act, event, condition, or opinion recorded or reasonably soon thereafter.

     The records attached hereto are exact duplicates of the original records.

_Trudy R Simons_
**Affiant**

**EXHIBIT**

tabbies

3

SWORN TO and SUBSCRIBED BEFORE ME on this _7ᵗʰ_ day of

_November_ , 2007.

_Elizabeth M. Schultz_

Notary Public in and for the State of

_Wisconsin_

My Commission Expires: _05-23-10_



PSYCHOLOGIST'S REPORT
Michael Gontarz
D.C. Everest Area Schools
6300 Alderson St.
Schofield, WI  54476

NAME:                        Kirk Jenkins
PARENTS:                     Mr./Mrs. David Jenkins
PHONE:                       359-9359
ADDRESS:                     2005 Hemlock
                             Schofield, WI  54476
SCHOOL:                      Rothschild Elementary
GRADE:                       3.5
BIRTHDATE:                   5/13/82
CA:                          8-8
DATE OF EVALUATIONS:         January, 1991
DATE OF REPORT:              January 31, 1991

CONFIDENTIAL

## REASON FOR REFERRAL:

Kirk was referred by this evaluator after academic screening results indicated delays in spelling and written language. An evaluation was conducted as part of assessing whether Kirk may qualify for the learning disabilities program.

## PROCEDURES COMPLETED:

Observations, teacher interviews, parent interviews, child history, Child Skills Checklist, Child Behavior Checklist, Teacher Report Form, ADHD Rating Scale, Wechsler Intelligence Scale for Children-Revised, Kaufman Test of Educational Achievement, Test of Auditory Perceptual Skills, Beery Developmental Test of Visual-Motor Integration, and Culture Free Self-Esteem Inventory.

## BACKGROUND INFORMATION:

**Family Information:**  Kirk lives with his natural parents and two older sisters (ages 13 and 16 respectively). His father is a physician, his mother is a teacher and homemaker. Kirk's oldest sister has had a history of learning, language and mobility (ataxia) difficulties and is currently receiving LD and speech/language services. Kirk's father also has a childhood history of learning difficulties; in addition, Mrs. Jenkins has the mobility deficit (ataxia).

**Medical/Developmental Information:**  Kirk was born early via C-section and weighed 8 lbs., 15 oz. Infant feeding, weight gain and activity level were all normal. Childhood illness and injury history is uneventful. According to parental reports, Kirk's current medical condition is excellent. No eating, sleeping, vision, or hearing problems are noted. Kirk's current physician is Ellen Schumann, M.D. of Wausau (847-3575); his last physical examination was in the spring of 1990.

Developmentally, many of Kirk's milestones arrived quickly (walking, babbling, speaking first word, putting words together). All other milestones arrived at an average rate. Language development has been characterized by easy to understand speech and an excellent and mature vocabulary.

1

Prior Education, Interventions, and Assessment Results:

Kirk began his educational career at Kinder-Care/Montessori Preschool, before enrolling in Rothschild Elementary. He enjoys school; his attendance is excellent. Kirk has been receiving one to one, small group regular education instruction whenever available. Teachers have been concerned from year to year about Kirk's academic progress in spelling, written language, and reading.

A screening completed in November, 1990, using the Kaufman Test of Educational Achievement indicated that Kirk was above grade level in math, 1/2 to 1/4 grade year behind in reading, and 1 to 1 1/2 grade years delayed in spelling.

OBSERVATIONS:

Observations of Kirk during testing indicated that he was very cooperative, pleasant, and hard-working. Kirk spontaneously initiated conversation with the evaluator, often elaborating on various topics. He also exhibited a fine range of affect and even displayed some appropriate humor. However, Kirk needed some instructions repeated (especially if the instructions contained numbers - like a mental arithmetic problem).

ASSESSMENT DISCUSSION:

Cognitive/Intellectual: Kirk's current level of intellectual functioning, as measured by the Wechsler Intelligence Scale for Children-Revised, is in the superior range as he obtained a Full Scale IQ of 139 +/- 5 (99th percentile). The chances are 90 out of 100 that Kirk's true Full Scale IQ falls between 134 and 144. His obtained Verbal IQ of 133 +/- 6 (99th percentile, superior) and Performance IQ of 135 +/- 7 (99th percentile, superior) would suggest that the chances are 90 out of 100 that Kirk's true Verbal IQ falls between 127 and 139 and true Performance IQ between 128 and 142.

Within the Verbal Section of the WISC-R, Kirk displayed a relative strength in the area of understanding the relationships between things and ideas (high). His ability to understand and interpret social situations was also quite high. Kirk's general knowledge, mental arithmetic, and vocabulary were all much above average. Therefore, Kirk verbally demonstrated above average to superior verbal comprehension, verbal concentration, and conceptualizing ability. Short-term auditory memory (auditory sequencing) was a relative weakness for Kirk when compared to his test average/mean. The Test of Auditory Perceptual Skills indicated average to above average skills in most areas except auditory interpretation of directions. Again, Kirk displayed some auditory sequencing difficulties.

Within the Performance Section of the WISC-R, Kirk displayed high skills in the visualization and construction of objects and abstract designs. His ability to understand visual sequences of action, learn new non-verbal material under time restraints, and visually plan ahead were all very much above average. Therefore, Kirk's visual concentration, perceptual-motor development, non-verbal memory, and understanding of spatial relationships are all quite advanced. Only one relative weakness was exhibited when compared to his overall performance average: the ability to distinguish essential from non-essential visual details.

2

Informal testing indicated that Kirk had some left-right confusion. He was able to repeat polysyllabic words, mentally solve subtraction problems, and readily discriminate between rhyming and non-rhyming words. He could not, however, say the months in sequence (repeatedly incorrectly sequencing September, October, November as October, September, November); he became very confused when saying the months backwards. Kirk's recitation of the multiplication tables was sometimes inaccurate for the 4 and 5 tables.  (1)

Given Kirk's superior intellectual abilities, educators can expect him to be academically functioning at or near the beginning fifth grade level.  (2)

Achievement: Kirk's performance on the Kaufman Test of Educational Achievement revealed the following results:

|  | Standard Score | Percentile | Grade Level |
|---|---|---|---|
| Math Application | 110 | 75th | 4.1 |
| Math Computation | 112 | 79th | 3.9 |
| Overall Math | 113 | 81st | 4.0 |
| Reading Decoding | 93 | 32nd | 2.6 |
| Reading Comprehension | 104 | 61st | 3.7 |
| Overall Reading | 98 | 45th | 3.0 |
| Spelling | 87 | 19th | 2.1 |

Kirk's main achievement difficulty was in the area of spelling where he had the most problems spelling vowel digraphs and dipthongs (ou, ai, oe, ie, ea), suffixes or word endings (on, or) and consonant clusters and diagraphs (fr, br). Reversals of b and d were evident but not consistent. Reading decoding also indicated difficulties with vowel digraphs and dipthongs and single and double consonants. Kirk's decoding difficulties, when compared to his cognitive abilities, are significant but he compensates very well when comprehending as he picks up contextual cues. Teachers report that Kirk is in the middle reading group and is functioning well within that group. His reading needs, for the time being, are being met in the regular education classroom. Kirk is also in the middle math group and is doing very well in that group. However, given that Kirk shows significant spelling weaknesses, some left-right confusion, some confusion of b and d, and difficulty with multiplication tables and auditory sequencing, he may be showing some signs of dyslexic tendencies.  (3)

Socio-Emotional/Behavioral: Parental reports and responses on the Child Behavior Checklist indicate that there are no significant behavioral problems that are affecting Kirk's learning. He is described as a very cooperative, appropriately sensitive child who wants to please. He perseveres rather well in most tasks. Kirk is emotionally mature for his age and seeks responsibility. He exhibits typical and appropriate verbal and physical interaction with family members and peers and has a long attention span. He organizes himself in work and play rather well. However, Kirk is repeatedly frustrated with his school performance in reading and spelling; he has voiced concerns that he might be "dumb".

Teachers report that Kirk exhibits excellent effort and attention. His interaction with peers and adults is typical and appropriate. Cooperation, organization, and other general behavior are all average to above average. There are no significant behaviors that could be interfering with Kirk's learning. However, student interviews indicate that Kirk is well aware of his academic weaknesses in written language, and, to some degree, in reading. His resilience in coping with various academic weaknesses may deteriorate if appropriate remediation is not implemented in his educational program.

<u>IMPRESSIONS/RECOMMENDATIONS</u>:

Kirk is a third grade student who was referred due to weaknesses in spelling, written language, and to some degree reading. Background information indicates family history of learning problems. Kirk is of superior intelligence, but has relative weaknesses in short-term auditory memory (especially in sequencing) and in distinguishing essential from non-essential visual details. He shows significant spelling weaknesses and some reading decoding problems but compensates in the latter when he must comprehend what is read. There is also some mild left-right confusion, b and d reversals, and confusion with multiplication tables. His superior intelligence, excellent behavior, effort, and willingness to persevere has helped Kirk compensate for these weaknesses so far. However, Kirk's frustration with specific academic weaknesses is increasing. Therefore, Kirk is in need of one to one, small group instruction in the area of spelling. Although reading decoding is near the discrepancy level, Kirk's comprehension is not. Therefore, it is questioned if reading should be considered an EEN. Since Kirk is achieving success in the middle reading group, we should continue regular education for reading with close monitoring by the learning specialist. If he is no longer able to compensate in reading as he has been doing or if regular education can no longer meet his needs, then we can include reading on his IEP.

*[handwritten margin note: KEY SENTENCE]*

*[handwritten margin note: INDEPENDENT EDUCATIONAL PLAN]*

*[handwritten margin note: - LET'S GIVE HIM HELP IN SPELLING & DECODING:]*

*[handwritten margin note: - LETTER USED TO GIVE HIM IND; DID REVISE READING WORK]*

*[signature: Michael Gontarz]*

Michael Gontarz, MSEd, NCSP
School Psychologist

MG:do

cc:  Jim Harris, Principal
     Dan Hazaert, Director of Pupil Services
     Dr. and Mrs. Jenkins, Parents
     Lori Anderson, Learning Disabilities Specialist
     Ellen Schumann, Physician

4

D. C. EVEREST AREA SCHOOL DISTRICT
FORM C
6300 ALDERSON STREET, SCHOFIELD, WI 54476

## INVITATION TO MULTIDISCIPLINARY TEAM MEETING

Dear **Dr.s Mrs Jenkins**     Date **Jan 23, 1991**

The district's multidisciplinary team (M-Team) is completing its evaluation of **Kirk** and will be meeting to discuss the results and to determine if your child has exceptional educational needs. You are encouraged to attend this meeting. It will be held at **3:30 PM**
                                                          (time)

on **2-7-91** at **Rothschild School**
    (date)        (location) **LD Room**

You may bring a friend or advisor to the meeting with you if you wish. If your child is a member of a minority group, a member of that minority may attend the meeting and help with the decision making process. The following are members of the M-Team:

| Name | Title/Position |
| --- | --- |
| C. Wangen | teacher |
| R. Colton | teacher |
| L. Teegarden-Anderson | LD teacher |
| M. Gontarz | school psychologist |

Each of these people has been involved in the evaluation of your child. Each will attend the meeting or be represented by someone who is knowledgeable about your child and the evaluation which was done. These other people may also be present at the meeting. While they did not conduct evaluations, they can contribute to the decision making process.

| Name | Title/Position |
| --- | --- |
| T. Harris | school principal |

Please indicate below whether you will attend the meeting and return one copy of this form to me. If you have any questions, I can be reached at **359-3186**.

*L. Teegarden-Anderson, LD Teacher*
(Name and title of district contact person)

☒ 1. I/We will attend the meeting as scheduled.

☐ 2. I/We do not wish to attend the meeting. Please proceed without us.

_____      **1/28/91**
Signature of parent or legal guardian        Date

9/1/90   cc:   Parent (Original)  _Director  _Teacher  _Principal

Dear _DR AND MRS JENKINS_                          Date ___2-7-91___

On ___2-7-91_____, a multidisciplinary team met to determine if your child had a need for special education. Enclosed is a copy of each report of findings proposed by the team. If there was more than one proposed report, I have indicated the report which was approved. If you were not at the meeting of the team, you may request a conference to review the report(s). If you would like such a conference, you may bring a friend or advocate with you. Please call the person indicated below to arrange a meeting at a mutually agreeable time.

If there is more than one report, I approved the final report and rejected the others for the following reasons:

CONSENSUS OF MTEAM MEMBERS

_Michael J Gontarz_
**Signature of director/designee**

---

We would like to meet with you to develop/review the individualized education program (IEP) to meet the educational needs of your child. You are encouraged to attend this meeting. It has been scheduled for ___4:15 P.M.___

on ___2-7-91___ at _ROTHSCHILD_ for _KIRK JENKINS_ DOB _5-13-82_
     (date)         (location)          (child)                          (time)

The purpose of this IEP meeting is to:
[X] Develop an initial preplacement IEP          [ ] Review IEP following an evaluation

You may bring a friend or advisor to the meeting with you if you wish. The following school staff will be present at the meeting:

| Name | Title/Position |
|---|---|
| MICHAEL J GONTARZ | SCHOOL PSYCHOLOGIST |
| JIM HARRIS | PRINCIPAL |
| RANDY COLTON | REG. ED. TEACHER |
| LORI ANDERSON | LD SPECIALIST |
| | |

Please read the statement of parent and child rights enclosed with this invitation. Please indicate your decision below and return one copy of this form to me. If you have any questions, I can be reached at ___359-3186___.

The district is required by law to inform you about the consent which must be given by parents. Your consent is required for both evaluation and placement in special education. Those consents continue in effect unless you revoke them. You have the right to revoke your consent in writing at any time. If you revoke your consent for evaluation, the district may not do further evaluations and is prohibited by law from providing special education beyond three years after the last completed evaluation. If you revoke your consent for placement in special education, the district is not permitted to provide any further special education for your child. Please be aware that if you revoke your consent at some future time, the district may choose to initiate a due process hearing to allow it to evaluate your child without your consent.

_MICHAEL J GONTARZ- SCHOOL PSYCH._
**(Name and title of district contact person)**

| These consents are currently in effect for your child: |
|---|
| Evaluation:  given  _12·7·90_ |
| Placement:  given _____ |

---

[X] 1. I/We will attend the meeting as scheduled.

[ ] 2. I/We cannot attend a meeting as scheduled. I could attend a meeting at _____ on _____
                                                                    (time)          (date)
        at _____.
              (location)

[ ] 3. I/We cannot attend a meeting in person, but would like to be involved by telephone at this number _____
        _____.

_Deanne Jenkins_                                          ___2-7-91___
**Signature of parent or legal guardian**                      **Date**

9/1/90  cc:  Parent(Original) __Director __Teacher __Principal

D. C. EVEREST AREA SCHOOL DISTRICT
00 ALDERSON STREET, SCHOFIELD, ~ 54476

FORM C1
Page 1 of 3

**MULTIDISCIPLINARY TEAM REPORT**

Date _2-7-91_
(M-Team Meeting)

| Child's Name | Date of birth | Sex | Grade |
|---|---|---|---|
| Kirk Jenkins | 5-13-82 | ☒M ☐F | 3 |

| Parent/Guardian | Address | Telephone *Area/No.* |
|---|---|---|
| David and Deanne Jenkins | 2005 Hemlock, Schofield | 359-9359 |

| Date of Receipt of Referral 12-7-90 | Type of M-Team ☒ Initial ☐ Re-evaluation | Home Attendance Area Rothschild Elem | Service Location Rothschild |
|---|---|---|---|

**I. Examination of existing data:** (attach additional pages as necessary)

**A. Summary of documentation from referral source.**

Kirk was referred by M. Gontarz, school psyc. due to delays in written language, spelling and reading.

**B. Summary of report of educational performance.**

Reading: overall way grade 2, although decoding skills are at beg. grade one level, due to Kirk's high intellectual abilities and contexual cue/coping strategies; Spelling: beg grade 2 level; Writ Lang - grade1 level; Math grade 4 level; Intellectual/Cognitive - superior range.

**C. Summary description of previous interventions.**

Kirk receives one-to-one and small group assistance when necessary.

**D. Summary of health factors.**

No significant difficulties

**E. Summary of social behavior.**

No significant difficulties

**F. Child's learning style and how specific concepts or skills or both are acquired and used.**

Appears to learn best through hands-on, multi-sensory approach.

**II. Summary of consultation with parent(s):**

Mother participated with discussions.

9/1/90   cc:   __Director   __Principal   __Teacher   __Parent

Date **2-7-91**
8500 ALDERSON STREET, SCHOFIELD, WI 54476
Page 2 of 3

Child's Name **Kirk Jenkins** DOB **5-13-82** Building **Rothschild**

**III.  M-Team determination of exceptional educational need:**
(There must be a handicapping condition and a need for special education to be EEN.)

A.  Does the child have one or more handicapping conditions?   ☑ Yes   ☐ No

1.  The handicapping condition is:

☐ Mental retardation or other developmental disability   ☐ Physical handicap

☑ Learning disability   ☐ Visual handicap

☐ Emotional disturbance   ☐ Hearing handicap

☐ Speech or language handicap

2.  Documentation of eligibility criteria in PI 11.35 having been met for each of the identified handicapping condition(s).

Kirk meets the eligibility requirements of average intelligence and 50% discrepancy of academic levels in spelling and written language.

B.  Does the child need special education due to the handicapping condition(s)?   ☑ Yes   ☐ No
Documentation of the need for special education.

Deficits in spelling and written language make it difficult for Kirk to achieve in regular education alone with EEN services.

C.  Recommendations regarding what related services the child may need.

☐ Occupational Therapy   ☐ Psychological Services
☐ Physical Therapy   ☐ Recreation
☐ Transportation   ☐ School Health Services
☐ Counseling   ☐ Social Work Services
☐ Audiology   ☐ Parent Counseling/Training
☐ Other *Specify* _____   ☐ Other *Specify* _____

Statement of reasons for the recommendations for related services.

9/1/90   cc:   __Director   __Principal   __Teacher   __Parent

Case 2:07-cv-00263-LA Document 1-2 Filed 12/06/07 Page 21 of 31 PageID 87

Date __9-11-__

Child's Name _Kirk Jenkins_    DOB _5-13-82_   Building _Rothschild_

**IV.**   If the child does not have an exceptional educational need:

    **A.**   **What are the child's non-exceptional educational needs?**
       **(Areas of educational need, which do not qualify as EEN)**

    **B.**   What other programs may benefit the child (include information about those programs or services)?

**M-Team members (each member must submit an individual evaluation report)**

| Name and Title | Signature | Agree | Disagree | Report Filed |
|---|---|---|---|---|
| C. Wangen, teacher | | | | |
| R. Colton, teacher | R. Colton | ✓ | | 2-7-91 |
| M. Gontarz, school psyc. | M Gontay | ✓ | | 2-7-91 |
| L. Teegarden Andersen LD teacher | L Teegarden Andersen | ✓ | | 2-7-91 |
| | | | | |
| | | | | |
| | | | | |

Alternative M-Team reports from those members disagreeing with these findings must be submitted. Each member of the M-Team must sign an M-Team report with which they are in agreement.

Others present (parent, guardian, advocate, interpreter, consultant, student) Name and Position/Title

_James A Harris, Principal_      _Deanne Jenkins_

**Director/Designee Action**

**A.**   This M-Team report meets the requirements of s.PI 11.04 and

    ___ **1.**   is agreed to by a majority of the M-Team members.
         OR
    ___ **2.**   I have met with the M-Team and accept this report which has been agreed to by less than a majority of the M-Team.

___   **B.**   Returned to the M-Team for further consideration and action on _____.
___   **C.**   This report is not approved.

_____      _____
Signature of Director/Designee            Date

9/1/90   cc: __Director __Principal __Teacher __Parent

| Name of student Kirk Jenkins | | Date of birth 5-13-82 | Sex M | Grade 3 |
|---|---|---|---|---|

Parent or legal guardian David and Deanne Jenkins
Address 2005 Hemlock, Schofield
Telephone Area/No. 359-9359

District of placement-Cont. IEP Only | Home Attendance Area Rothschild Elem | Service Location Rothschild

Race/Ethnic *If parents choose to identify,* please circle.
White – Black – Hispanic – American Indian/Alaskan Native – Asian/Pacific Islander –Other

Amount of special education *Percentage of time or amount of time* (in minutes per week by EEN program)
LD: 20 - 40%

Extent to which student will participate in regular education programs Recess, Art, Music, Phy.Educ.,
Guidance, Science, Social Studies, Math,

Related Services *Include specific amount of service*

Physical Education      ☑ Regular      ☐ Specially designed

Vocational Education    ☐ Regular      ☐ Specially designed

1. Beginning date of IEP ___2/13/91___        Ending date of IEP ___6/6/91___
   (mo./day/yr.)

2. Beginning date of IEP __8/26/91__          Ending date of IEP __February 1992__
   (mo./day/yr.)

   Will student participate in standardized testing?
r. Third grade reading test    ☑ Yes  ☐ No  ☑ With Modifications _____
s. Competency Based testing    ☑ Yes  ☐ No  ☑ With Modifications _____
s. Achievement testing         ☑ Yes  ☐ No  ☑ With Modifications _____

Justification for removal from regular education or regular education environment.

Due to academic delays Kirk cannot successfully achieve in regular education.

| Date of IEP meeting 2-7-91 | IEP review date | Documentation of efforts to involve the parents in the IEP. |
|---|---|---|
| IEP meeting participants | IEP meeting participants | |
| LEA Representative Jim A Harr | LEA Representative | 1) _____ |
| Special Education Teacher Alexander Anderson | Special Education Teacher | 2) _____ |
| Parent/Guardian David and Deanne Jenkins | Parent/Guardian | 3) _____ |

9/1/90  cc:  Director(Original) __Principal __Teacher __Parent

D. C. EVEREST AREA SCHOOL DISTRICT
6300 ALDERSON STREET
INDIVIDUALIZED EDUCATION PROGRAM

Case 2:07-cv-00263-J  Document 2  Filed 12/05/07  Page 23 of 31  PageID 89

FORM E1
Page 2 of 3

Date __2-7-91__

| Name of student | Date of birth | Service Location |
|---|---|---|
| Kirk Jenkins | 5-13-82 | Rothschild |

**Present levels of educational performance**

Kirk presently functions at a beginning grade 2 level in the academic area of spelling.

**Annual goal**

Kirk will improve his ability to spell.

| Short-term Objectives | Objective Criteria | EVALUATION | |
|---|---|---|---|
| | | Procedures | Schedule |
| Kirk will improve his ability to spell Dolch list/G&B irregular word lists. | 60-80% mastery | direct instruction worksheet/ practice tests | 2 times/week |
| Kirk will improve his ability to spell his address, birthdate, parents names, months of the year, days of the week and seasons. | | | 2 times/week |
| Kirk will improve his ability to spell words with cvc, cvce, ccvcc, cvvc and multi-syllable words. | | | daily practice |
| Kirk will improve his ability to use a dictionary. | | | 2 times/week |

**Specific special education and related services which will contribute to meeting this goal:**

Opportunities will be provided in self-contained spelling class.

**Action taken on this goal at IEP review:** _____  Date: _____

9/1/90  cc: Director(Original)__Principal __Teacher __Parent

D. C. EVEREST AREA SCHOOL DISTRICT
6300 ALDERSON STREET
Case 2:07-cv-00263-... Document 12 Filed 12/05/07 Page 24 of 31 PageID 90
INDIVIDUALIZED EDUCATION PROGRAM
FORM EI
Page 3 of 3

Date __2-7-91__

| Name of student | Date of birth | Service Location |
|---|---|---|
| Kirk Jenkins | 5-13-82 | Rothschild |

**Present levels of educational performance**
Kirk presently functions at a mid-grade one level in the academic area of written language.

**Annual goal** Kirk will improve his ability to write.

| Short-term Objectives | Objective Criteria | EVALUATION | |
|---|---|---|---|
| | | Procedures | Schedule |
| Kirk will improve his ability to correct capitalization and punctuation of Grade One-Two Daily Sentences. | 60-80% mastery | direct instruction teacher assessment worksheet/ practice tests | daily practice |
| Kirk will improve his ability to use spelling list words in written sentences with correct capitalization and usage. | | | |
| Kirk will improve his ability to write 5 sentences given a topic. | | | |
| Kirk will improve Basic English abilities to grade 3 level. | | | |

**Specific special education and related services which will contribute to meeting this goal:**
Opportunities will be provided in self-contained language class.

**Action taken on this goal at IEP review:** 　　　　　　Date: _____

9/1/90   cc:  Director(Original)__Principal __Teacher __Parent

*Parent Copy*

6300 ALDERSON STREET, SCHOFIELD, WI 54476

EVEREST SCHOOL DISTRICT

FORM F
(Initial Only)

NOTICE OF INTENT TO PLACE AND CONSENT FOR PLACEMENT    Page 1 of 2

Dear DR AND MRS JENKINS,          Date  2-7-91

Based on the multidisciplinary team evaluation which was sent to you and the individualized education program developed on 2-7-9_____, the district offers to place your child KIRK JENKINS_____, in the special education program described below.

## Part 1
### (to be completed by placement group)

Type of program to be provided, including delivery model: RESOURCE PROGRAM FOR CHILDREN WITH LEARNING DISABILITIES

Program level: ELEMENTARY (WIDE RANGE)

Other special education options considered and reason(s) they were rejected REGULAR EDUCATION REJECTED SINCE KIRK'S LEARNING DIFFICULTIES REQUIRE MORE ASSISTANCE THAN WHAT REGULAR EDUCATION CAN PROVIDE

Placement justification, including reasons for any removal from the regular education environment. GIVEN KIRK'S LEARNING DELAYS, REGULAR EDUCATION ALONE CANNOT ADEQUATELY AND APPROPRIATELY MEET HIS NEEDS

## Part 2
### (to be completed by director/designee)

Location of program: Rothschild Elementary School

Documentation of consideration of least restrictive environment (LRE): As per part I which has been completed by district staff.

Please be sure to read the list of parent and child rights which are included with this notice. If you have any questions about this placement or your rights, please call Michael Gantarz at 359-3186.

_David F. Hagen_
Signature of director/designee

These consents are currently in effect for your child:
Evaluation: given 12-7-90

3/1/90  cc: __Director  __Principal  __Teacher  __Parent

## AFFIDAVIT OF LORI TEEGARDEN

STATE OF __M N__   §
                   §
COUNTY OF __Anoka__   §

     Before me, the undersigned notary, on this day personally appeared Lori TeeGarden, a person whose identify is known to me. After I administered an oath to her, upon her oath she said:

     1.      My name is Lori TeeGarden. I am over the age of 18 and otherwise competent to make this affidavit. I have personal knowledge of the facts stated in this affidavit and they are true and correct.

     2.      I met Kirk Jenkins in his third grade year at Rothschild Elementary School in Rothschild, Wisconsin. Kirk was identified with Learning Disabilities in grade three and became one at my most memorable students; to this date I tell my present students about Kirk noting his dedication and perseverance because he had specific goals that he wanted to meet and strived each day to attain them.

     3.      I have been a Learning Disabilities teacher for over 20 years and also have a masters' in Education Curriculum and a second masters' in Reading. At Rothschild Elementary I was the Learning Disabilities specialist for grades kindergarten through grade six. Presently I am a Reading Specialist for a middle school in Fridley, Minnesota and participate on reading panel level assessments for the state of Minnesota.

     4.      Kirk was referred for a learning disabilities assessment due to experiencing difficulties and frustrations with the academics of written language, spelling and reading. He was evaluated by Michael Gontarz the school psychologist and myself, Lori TeeGarden-Anderson, learning disabilities teacher. Both assessments were shared at the Multidisciplinary Team

EXHIBIT

4

meeting that also included his grade three teachers, the school principal and both parents. Both assessments concluded difficulties in phonemic/phonic mastery, fluency, vocabulary, spelling and writing.

5.    As defined by the International Reading Association there are five essential components of effective, research-supported reading instruction which are phonemic awareness, phonics, fluency, vocabulary and comprehension along with instruction components of spelling, writing, assessment and motivation. Extensive conversation discussing Kirk's need for reading instruction occurred at this meeting, with discussion elaborating that Kirk's assessments illustrate that he was not proficient in the components of phonemic/phonics, fluency and sight word vocabulary. Through motivation and perseverance he was able to within the regular mainstream setting display a level of comprehension however, the concept of "reader" was discussed and as a team it was agreed that Kirk did not possess the abilities to be a reader due to the other missing essential components. This discussion led to the decision as to which placement would best meet his needs and be within the least restrictive environment.  The consensus was that Kirk would remain in the regular education setting for reading class only with the necessary additional support services or a learning disabilities setting for phonics, writing and supportive reading skills/strategies.

6.    It was agreed by all M-team members that Kirk was in need of one-to-one instruction to best meet his educational needs in reading and spelling. This is also documented in the school psychologist's report, "Since Kirk is achieving success in the middle reading group, we should continue regular education for reading with close monitoring by the learning specialist. If he is no longer able to compensate in reading as he has been doing or if regular education can no longer meet his needs, then we can include reading on his IEP."  This team

reached a unanimous consensus that due to Kirk's significant learning delays in spelling and reading components that regular education alone could not adequately and appropriately address his limited learning style and significant instructional needs.

7.      Extensive instruction centered upon the phonics component to support developing the skills of reading fluency. Spelling instruction was based upon the phonics approach and used specifically to support written composition and used to practice reading fluency. This instruction was primarily one-to-one instruction with occasional small-group practice sessions during a period of over 3 years. Kirk always gave his dedicated attention and effort to all instructional tasks and strived for his goal of becoming a "reader".  That goal of becoming a "reader" was discussed at IEP reviews and at the beginning and closing of each school year to determine Kirk's academic progress and goals. Kirk was only able to participate within the mainstream of regular education reading classes because of the supportive-instruction that he was receiving from his placement in the Learning Disabilities classroom and the support of follow-through that he received at home. As by state mandates, Kirk's placement had to be justified as being the least restrictive environment, thus he continued to receive support services from Learning Disabilities and remained in regular reading only with the accommodations and extensive support services that allowed that placement to continue  It is certain that if that support system were not in place Kirk would not have been able to progress with regular elementary education due to his substantially limited abilities in reading and spelling.

                                                    _____
                                                                      Affiant

SWORN    TO    and    SUBSCRIBED    BEFORE    ME    on    this _13 $^{th}$_ day    of

_November_ , 2007.

MARK JOSEPH HAWKINS
Notary Public - Minnesota
Commission No. 31012219
My Commission Expires Jan. 31, 2011

Notary    Public    in    and    for    the    State    of
_MINNESOTA_

My Commission Expires: _1/31/2011_



**Fridley Public Schools**

A World-Class Community of Learners

Lori TeeGardem
Reading Specialist
Fridley Middle School
6100 West Moore Lake Drive
Fridley, Minnesota 55432
School Phone: 763-502-5417
Summer Phone: 763-236-6953
School Fax: 763-502-5440

June 29, 2007

NBME Disability Services
3750 Market Street
Philadelphia, PA  19104

It is my greatest joy to write this letter on behalf of Kirk Jenkins, a student that I met
in his third grade year at Rothschild Elementary School in Rothschild, Wisconsin.
Kirk was identified with Learning Disabilities in grade three and became one of my
most memorable students; to this date I tell my present students about Kirk noting
his dedication and perseverance because he had specific goals that he wanted to
meet and strived each day to attain them.

I have been a Learning Disabilities teacher for over 20 years and also have a masters' in
Education Curriculum and a second masters' in Reading.  At Rothschild Elementary I was
the Learning Disabilities specialist for grades kindergarten through grade six.  Presently I
am a Reading Specialist for a middle school in Fridley, Minnesota and participate on
reading panel level assessments for the state of Minnesota.

Kirk was referred for a learning disabilities assessment due to experiencing difficulties and
frustrations with the academics of written language, spelling and reading.  He was
evaluated by Michael Gontarz the school psychologist and myself, Lori TeeGarden-
Anderson, learning disabilities teacher.  Both assessments were shared at the
Multidisciplinary Team meeting that also included his grade three teachers, the school
principal and both parents.  Both assessments concluded difficulties in phonemic/phonics
mastery, fluency, vocabulary, spelling and writing.

As defined by the International Reading Association there are five essential components of
effective, research-supported reading instruction which are phonemic awareness, phonics,
fluency, vocabulary and comprehension along with instruction components of spelling,
writing, assessment and motivation.  Extensive conversation discussing Kirk's need for
reading instruction occurred at this meeting, with discussion elaborating that Kirk's
assessments illustrate that he was not proficient in the components of phonemic/phonics,
fluency and sight word vocabulary.  Through motivation and perseverance he was able to
within the regular mainstream setting display a level of comprehension however, the
concept of "reader" was discussed and as a team it was agreed that Kirk did not possess
the abilities to be a reader due to the other missing essential components.  This discussion
led to the decision as to which placement would best meet his needs and be within the
least restrictive environment.  The consensus was then that Kirk would remain in the

regular education setting for reading class only with the necessary additional support services or a learning disabilities setting for phonics, writing and supportive reading skills/strategies.

It was agreed by all M-team members that Kirk was in need of one-to-one instruction to best meet his educational needs in reading and spelling. This is also documented in the school psychologist's report, "Since Kirk is achieving success in the middle reading group, we should continue regular education for reading with close monitoring by the learning specialist. If he is no longer able to compensate in reading as he has been doing or if regular education can no longer meet his needs, then we can include reading on his IEP." This team reached a unanimous consensus that due to Kirk's significant learning delays in spelling and reading components that regular education alone could not adequately and appropriately address his limited learning style and significant instructional needs.

Extensive instruction centered upon the phonics component to support developing the skills of reading fluency. Spelling instruction was based upon the phonics approach and used specifically to support written composition and used to practice reading fluency. This instruction was primarily one-to-one instruction with occasional small-group practice sessions during a period of over 3 years. Kirk always gave his dedicated attention and effort to all instructional tasks and strived for his goal of becoming a "reader". That goal of becoming a "reader" was discussed at IEP reviews and at the beginning and closing of each school year to determine Kirk's academic progress and goals. Kirk was only able to participate within the mainstream of regular education reading classes because of the supportive-instruction that he was receiving from his placement in the Learning Disabilities classroom and the support of follow-through that he received at home. As by state mandates Kirk's placement had to be justified as being the least restrictive environment, thus he continued to receive support services from Learning Disabilities and remained in regular reading only with the accommodations and extensive support services that allowed that placement to continue. It is certain that if that support system were not in place Kirk would not have been able to progress with regular elementary education due to his substantially limited abilities in reading and spelling.

Please contact me with any further questions or concerns.

Sincerely,

Lori TeeGarden
Reading Specialist