## AFFIDAVIT OF RANDALL B. COLTON

STATE OF __Wisconsin__ §
                                  §
COUNTY OF __Marathon__ §

Before me, the undersigned notary, on this day personally appeared Randall B. Colton, a person whose identify is known to me. After I administered an oath to him, upon his oath he said:

1.    My name is Randall B. Colton. I am over the age of 18 and otherwise competent to make this affidavit. I have personal knowledge of the facts stated in this affidavit and they are true and correct.

2.    Kirk Jenkins was in my 1991-1992 grade four classroom. I remember Kirk as a well-mannered and well-balanced individual who related well with peers and school staff. A diligent worker, he reflected strong family influences: good character, importance of education, and responsibility. Kirk was a good student – particularly in areas of his high interest, social studies and science. I could always count on him to exhibit strong citizenship skills of responsibility and respect. Always a positive and "gung-ho" participant in class activities, it did not occur to me that Kirk was quietly struggling. Kirk was experiencing difficulty with our weekly spelling work. His challenges in spelling were the most obvious clues to me that Kirk was having difficulty in the area of language arts.

3.    An intervening Multidisciplinary Team (M-Team) was formed – consisting of his parents, the school psychologist, the learning disabilities teacher, the principal and me to compile state-required documentation of Kirk's areas of need. The psychologist found that Kirk was often frustrated and expressed feelings of being "dumb". We also discovered that Kirk tested in the superior intelligence range, which allowed him to cope with academic weaknesses. I was not

EXHIBIT

5

fully appreciating his difficulties in advancing his academic performance to more realistically reflect his intellectual capacities. In spite of his consistent efforts, Kirk was not performing at his potential. Developing his academic potential was "stymied" by what I was to later find out was a learning disability, dyslexia.

4. After Kirk's testing, the M-team came to the conclusion that Kirk would benefit from the assistance of learning disabilities (LD) instruction. He was placed in our LD program to receive specific one-on-one, and small group work on phonics. His LD teacher, Mrs. Lori Anderson, was a tour-de-force who bolstered his language arts skills base and helped to establish compensatory strategies that would serve Kirk in my classroom. This is not to say that Kirk's learning disability was "cured." With skills acquired from Mrs. Anderson, Kirk was able to more successfully work through the reading and writing which was necessary in many of his classes, but it still took extra processing time. As is still the case for students in my classroom, I allowed extra time for completion of tests. I am interested in student acquisition of concepts more than in how long it takes to complete tasks.

5. This past autumn, all fourth graders in our state were administered the annual Wisconsin Knowledge and Concepts Examination (WKCE). The WKCE is a series of tests that seeks to evaluate grade four student competencies through all core curriculum areas. It is "mandatory" that all special education students be given appropriate accommodations, noted in their Individual Education Plans (IEP), to more accurately measure their abilities. This year several special education students in my classroom were given extended time to take the test. If Kirk had been in my classroom this year he too would have been given extended time. Certainly, as dyslexia is a lifelong challenge, it seems only logical that an individual with Kirk's

history ought to be accommodated with extended time for testing to most accurately reflect his competencies.

_Randall B Colton_
Affiant

SWORN TO and SUBSCRIBED BEFORE ME on this 8TH day of NOVEMBER, 2007.

_Timothea A. Furmanick_
Notary Public in and for the State of
WISCONSIN  EXP. 6/13/10

21 January 2007

NBME Disability Services
3750 Market Street
Philadelphia, PA   19104

National Board Panel:

In my 1991-1992 grade four classroom, I remember Kirk Jenkins as a well-mannered and well-balanced individual who related well with peers and school staff.  A diligent worker, he reflected strong family influences: good character, importance of education, and responsibility.  Kirk was a good student – particularly in areas of his high interest, social studies and science.  I could always count on him to exhibit strong citizenship skills of responsibility and respect.  Always a positive and "gung-ho" participant in class activities, it did not occur to me that Kirk was quietly struggling.  Kirk was experiencing difficulty with our weekly spelling work.  His challenges in spelling were the most obvious clues to me that Kirk was having difficulty in the area of language arts.

An intervening Multidisciplinary Team (M-Team) was formed - consisting of his parents, the school psychologist, the learning disabilities teacher, the principal and me- to compile state-required documentation of Kirk's areas of need. The psychologist found that Kirk was often frustrated and expressed feelings of being "dumb".  We also discovered that Kirk tested in the superior intelligence range, which allowed him to cope with academic weaknesses. I was not fully appreciating his difficulties in advancing his academic performance to more realistically reflect his intellectual capacities.  In spite of his consistent efforts, Kirk was not performing at his potential. Developing his academic potential was "stymied" by what I was to later find out was a learning disability, dyslexia.

After Kirk's testing, the M- team came to the conclusion that Kirk would benefit from the assistance of learning disabilities (LD) instruction. He was placed in our LD program to receive specific one-on-one, and small group work on phonics.  His LD teacher, Mrs. Lori Anderson, was a tour-de-force who bolstered his language arts skills base and helped to establish compensatory strategies that would serve Kirk in my classroom.  This is not to say that Kirk's learning disability was "cured."  With skills acquired from Mrs. Anderson, Kirk was able to more successfully work through the reading and writing which was necessary in many of his classes, but it still took extra processing time.  As is still the case for students in my classroom, I allowed extra time for completion of tests.  I am interested in student acquisition of concepts more than in how long it takes to complete tasks.

This past autumn, all fourth graders in our state were administered the annual Wisconsin Knowledge and Concepts Examination (WKCE). The WKCE is a series of tests that seeks to evaluate grade four student competencies through all core curriculum areas. It is "mandatory" that all special education students be given appropriate accommodations, noted in their Individualized Education Plans (IEP), to more accurately measure their abilities. This year several special education students in my classroom were given extended time to take the test. If Kirk had been in my classroom this year he too would have been given extended time. Certainly, as dyslexia is a lifelong challenge, it seems only logical that an individual with Kirk's history ought to be accommodated with extended time for testing to most accurately reflect his competencies.

I hope this disclosure will be of assistance,

*Randall B. Colton*

Randall B. Colton
Weston Elementary
5200 Camp Phillips Road
Schofield, WI 54476
(715) 359-4181, extension 5603
rcolton@dce.k12.wi.us

## AFFIDAVIT OF WILLIAM HEEREN

**STATE OF** _Wisconsin_    §
                            §
**COUNTY OF** _Marathon_    §

Before me, the undersigned notary, on this day personally appeared William Heeren, a person whose identify is known to me. After I administered an oath to him, upon his oath he said:

1.      My name is William Heeren. I am over the age of 18 and otherwise competent to make this affidavit. I have personal knowledge of the facts stated in this affidavit and they are true and correct.

2.      Kirk Jenkins was a student in my 2nd hour honors chemistry class during the 1997-1998 school year, his sophomore year. Although it has been a number of years since I had Kirk in class, I remember several details about Kirk that might be helpful to you.

3.      One memory that is easy for me to recall is of Kirk staying after class, and in some cases after school; to finish his tests. It would seem as if he would meticulously work through the problems, be they essay or calculation. If you were not familiar with Kirk, it would have been easy to question his ability at that point. However, if you had ever seen Kirk in action in the classroom—with Kirk assuming a leadership role in class, sharing creative questions and comments—you would immediately see that something was different. It didn't make sense that a student who was such a leader on a day-to-day basis would struggle to the degree he did when taking tests, unless one recognizes Kirk's disability. He did well on the tests. It just took him a long time to finish them.

_William Heeren_
Affiant

EXHIBIT

6

SWORN TO and SUBSCRIBED BEFORE ME on this 8th day of _November_, 2007.



_Michelle Janda_

Notary Public in and for the State of _Wisconsin_

My Commission Expires: _August 01, 2010_



# D.C. Everest Senior High School
6500 Alderson Street, Weston, WI 54476
715-359-6561 Fax 715-355-7220

Thomas W. Johansen, Principal
Todd J. Bohm, Assistant Principal
Mark L. Holbrook, Assistant Principal

January 3, 2007

NBME Disability Services
3750 Market Street
Philadelphia, PA 19104

To Whom It May Concern,

Today I received a request from a very special student from a number of years ago, Kirk Jenkins. Kirk was a student in my 2nd hour honors chemistry class during the 1997-1998 school year, his sophomore year. Although it has been a number of years since I had Kirk in class, I remember several details about Kirk that might be helpful to you. Allow me share them with you.

One memory that is easy for me to recall is of Kirk staying after class, and in some cases after school, to finish his tests. It would seem as if he would meticulously work through the problems, be they essay or calculation. If you were not familiar with Kirk, it would have been easy to question his ability at that point. However, if you had ever seen Kirk in action in the classroom—with Kirk assuming a leadership role in class, sharing creative questions and comments—you would immediately see that something was different. It didn't make sense that a student who was such a leader on a day-to-day basis would struggle to the degree he did when taking tests, unless one recognizes Kirk's disability. He did well on the tests. It just took him a long time to finish them.

You can understand why I would remember Kirk from that trait. You should also know that I remember Kirk even more so from some other recollections. In honors chemistry at our school, students are required to complete a project of their choice showing some application of chemistry. They then need to present their work in front of some audience. I remember Kirk (and his partners, Alex, Derek, and Mitch) decided to do a project on making the ideal tennis shoe. Well, instead of just working with some childhood polymer—and I can remember this as if it was yesterday—Kirk and his colleagues pursued actually establishing a working relationship with a Nike representative. Kirk was the driving force in making this connection to the Nike representative. I remember several times when Kirk was talking to a representative from Nike on the phone long distance looking into the chemistry behind the elastomers used in shoes. If I remember correctly, they carried on quite the series of conversations. The only thing that I think ended their discourse was when the researcher had to leave for a different position in Asia. Looking back, for a high school student far removed from a polymer research lab, it was a wonderful opportunity…all because of Kirk Jenkins' drive and determination. If you know Kirk, it would go without saying that their presentation was also very special.

I don't pretend to be an expert on dyslexia—in fact, I know very little about the disability. I do know, though, that if I were an ailing patient, I would want Kirk Jenkins to be fighting for me. The talent, creativity, and drive that Kirk displayed were the kinds of characteristics I would want from any of my doctors. I would hope you would see why we need people like Kirk Jenkins serving us.

If you have need of any further information, please feel free to contact me.

Sincerely,

William Heeren
Chemistry Teacher

## BUSINESS RECORDS AFFIDAVIT

STATE OF __WI__ §

COUNTY OF Marathon §

    BEFORE ME, the undersigned authority, personally appeared _Denise M Huebner_ who, being by me duly sworn, stated as follows:

    My name is _Lynn Schoepke_, I am over twenty-one (21) years of age, of sound mind, capable of making this affidavit, and have knowledge of the facts herein stated.

    I am the custodian of the records of David R. Holmes, Ph.D. Attached hereto are 12 pages of records from David R. Holmes, Ph.D., regarding Kirk D. Jenkins. These said 12 pages of records are kept by the said custodian of records in the regular course of business, and it was the regular course of business of David R. Holmes, Ph.D. for an employee or representative of David R. Holmes, Ph.D. with knowledge of the act, event, condition, or opinion recorded to make the memorandum or record or to transmit information thereof to be included in such memorandum or record; and the memorandum or record was made at or near the time of the act, event, condition, or opinion recorded or reasonably soon thereafter.

    The records attached hereto are exact duplicates of the original records, and it is the policy of David R. Holmes, Ph.D. not to permit the originals to leave this office.

                                            _Lynn Schoepke_
                                            Affiant

SWORN TO and SUBSCRIBED BEFORE ME on this __9__ day of _November_, 2007.

BUSINESS RECORDS AFFIDAVIT – PAGE 1

**EXHIBIT**

7

```
┌─────────────────────────┐
│                         │
│    DENISE M HUEBNER      │
│     Notary Public        │
│   State of Wisconsin     │
│                         │
└─────────────────────────┘
```

Notary Public in and for the State of
Wisconsin

My Commission Expires: 12/03/10

**Psychological Report**
**David R. Holmes, Ph.D.**
**2620 W. Stewart Ave.; Suite 318**
**Wausau, WI   54401**
**[715] 848-0525**

**Date:** 10/02/1999

**Profile:** Kirk D. Jenkins is a 17 year old [DOB: 05/13/1982] high school senior who was seen for evaluation of complications possibly related to his learning style.

**Reason for Referral:**
Kirk has a history of learning style difficulties. He is to take nationally standardized achievement tests for college placement. He considers whether it is appropriate for him to request extended-time testing for this. Considerations also exist about any special academic needs re his pending college career.

**Basis of Evaluation:**
He was seen individually. The school psychologist's [Michael Gontarz, MS] report, dated 1/31/1991 was available for review. During the current evaluation, Kirk was administered the Wechsler Adult Intelligence Scale-3rd Edition [WAIS-III], Wechsler Individual Achievement Test [WIAT], Outcome Questionnaire [OQ-45.11], Thurstone Word Fluency, and Beck Depression Inventory-II.

**Background:**
He is the youngest of three children to Dr. David and Dee Jenkins. His father is a physician and his mother is a teacher/homemaker. His siblings include Sara [26] and Katie [21]. Dr. Jenkins reported a personal history of undiagnosed LD impacting him through his educational career. One of Kirk's siblings also has a history of EEN-LD services in school.

The WISC-R results reported in 1991 were FSIQ = 139, VIQ = 133, and PIQ = 135. The Kaufman Test of Educational Achievement results from 1991 were Overall Math = 113, Overall Reading = 98, and Spelling = 87.

**Observations:**
He arrived on time in the company of his father for the evaluation. His appearance was appropriate. He was reserved interpersonally but answered questions posed to him. He was well oriented to time as demonstrated by him correctly dating several office forms independently. He seemed to exert good work efforts on all tasks. His thinking was goal directed and cohesive as shown on his answers to the short-answer test-items. The following quantitative test results are deemed to be a representative sample of his current functioning.

**Assessment and Test Results:**

The WAIS-III is an individually administered test of current intellectual functioning. It produces a Full Scale IQ. The FSIQ is the overall summary score estimating one's general level of intellectual functioning. The WAIS-III also yields standard scores based on various composites of subtest scaled scores. These Index scores allow for more specific description of one's particular strengths and weaknesses.

One combination of Index Scores involves the traditional Verbal IQ and Performance IQ. The VIQ is a measure of acquired knowledge, verbal reasoning and attention to verbal materials. The PIQ is a measure of fluid reasoning, spatial processing, attentiveness to detail and visual-motor integration.

Another combination of Index Scores is derived from factor analysis. Factor analysis tries to make more refined, 'purer' measures of specific mental factors. The Verbal-Conceptual Index [VCI] is a measure of verbal acquired knowledge and verbal reasoning. It is similar to the VIQ with the attention/concentration measures removed. The Perceptual-Organizational Index [POI] is a measure of non-verbal, fluid reasoning, attentiveness to detail and visual-motor integration. Quick responding is less important within POI than in the PIQ. The Working Memory Index [WMI] is a measure of attending to information, processing the information in memory and formulating a response. The Processing Speed Index [PSI] is a measure of the individual's ability to process visual information quickly. The following scores are prorated given that the Comprehension and Picture Arrangement subtests were not administered.

| Index | Standard Score | Percentile Rank | Confidence Interval |
|---|---|---|---|
| Verbal IQ | 118 | 88 | 113--122 |
| Performance IQ | 121 | 92 | 113--127 |
| Full Scale IQ | 121 | 92 | 117--125 |
| | | | |
| Verbal Conceptual | 126 | 96 | 119--131 |
| Perceptual Organization | 123 | 94 | 114--129 |
| Working Memory | 94 | 34 | 88--101 |
| Processing Speed | 106 | 66 | 96--114 |

The difference between the VIQ and PIQ is not statistically significant. The FSIQ classifies his current intellectual functioning as being in the Superior range.

Examination of the index scores reflects meaningful discrepancies among his cognitive abilities. The WMI is statistically lower than both the VCI and the POI [both at .05 probability level]. Both of these discrepancies are uncommon to this degree within the national standardization sample [below the 2nd percentile for the VCI comparison and below the 4th percentile for the POI]. The PSI also is lower than the POI and the VCI. About one in five among the standardization sample showed discrepancies to this level though.

The WIAT is a comprehensive, individually administered battery for measurement of basic academic skills normed by age groups. It has norms for individuals from 5 up to age 19 years. It is co-normed with the Wechsler intelligence scales [WISC-III]. This allows calculation of estimates of <u>ability-achievement discrepancies</u>. The WIAT subtests have been designed to combine two estimates of an achievement area, the combination of which yields a composite score for several achievement domains [Reading, Mathematics, Language Composition, Writing]. The composite scores give a more reliable estimate of one's functioning in the domain. The combination of these composites can yield a Total Composite Score. For this administration, the Written Expression subtest was not administered. Most of the Composites can still be calculated based on the available data.



| Index | Standard Score | Percentile Rank | Confidence Interval |
|---|---|---|---|
| Basic Reading | 96 | 39 | 87--105 |
| Mathematics Reasoning | 111 | 77 | 101--121 |
| Spelling | 84 | 14 | 73-- 95 |
| Reading Comprehension | 104 | 61 | 91--117 |
| Numerical Operations | 88 | 21 | 75--101 |
| Listening Comprehension | ---- | | |
| Oral Expression | ---- | | |
| | | | |
| Reading Composite | 97 | 42 | 88--106 |
| Mathematics Composite | 103 | 58 | 94--112 |
| Language Composite | --- | | |
| Total Composite | --- | | |

These scores are essentially in the same ranges of the standard scores from the K-TEA administered to him in the school in 1991.

The WIAT was normed in relationship to the WISC-R and the WAIS-R to allow examination of any ability-achievement discrepancies. The WAIS-III produces slightly lower IQ scores than does the WAIS-R [the Flynn effect]. The results of an ability-achievement discrepancy analysis of his WIAT subtest scores and the WAIS-R FSIQ [with WAIS-III scores substituted] are presented below.

| WIAT Subtest | Predicted Score | Actual Score | Difference | Significance | Frequency |
|---|---|---|---|---|---|
| Basic Reading | 112 | 96 | 16 | .05 | below 10th PR |
| Mathematics Reasoning | 117 | 111 | 6 | n/a | |
| Spelling | 112 | 84 | 28 | .01 | 3rd PR |
| Reading Compreh. | 114 | 104 | 10 | .05 | 20th PR |
| Numerical Operations | 113 | 88 | 25 | .01 | below 10th PR |
| | | | | | |
| Reading Composite | 116 | 97 | 19 | .01 | 5th PR |
| Mathematics Composite | 116 | 103 | 13 | .01 | below 20th PR |

The technical manual indicates: "The correlations between WAIS-III IQ and Index Scores and the WIAT subtest scores parallel those between the WAIS-R and WIAT subtests."

The Beck Depression Inventory-II {BDI-II} is a 21 item self-report instrument for measuring the severity of depression in a population 13 years old and older. It is an indicator of the presence of and intensity of depressive symptoms, not as means of making a specific clinical diagnosis. His raw score of 7 is in the non-clinical range.

The Thurstone Word Fluency Test requires one to list within time limits, words starting with specified letters. It is normed to age 85. The task is a measure of verbal fluency but also of executive processing, e.g., picking a strategy and monitoring how one is adhering to the strategy. The scores are reported as T-scores, having an average of 50 and a standard deviation of 10. His raw score of 62 is in the high average range [T = 58; 79th PR]. This is mildly lower to but compatible with the VCI score.

**Impressions:**
Kirk Jenkins is a 17 year old high school senior who was seen for evaluation of complications possibly related to his learning style. The FSIQ classifies his current intellectual functioning as being in the Superior range. The WIAT showed all achievement scores to be technically in the average range but all subtest scores except for Mathematics Reasoning are significantly below expectation. This comparison is based on direct substitution of WAIS-III scores for WAIS-R scores into the tables even though it is known that the WAIS-III produces lower scores than did the WAIS-R [on average 2.9 points lower on FSIQ]. Further, several of the WIAT scores are below the level often considered to mark the LD ranges.

**Recommendations:**
Provide feedback to Mr. Jenkins and his family. Encourage him to make use of compensatory aides when focusing on the spelling concerns given that remediation efforts historically tend not to be effective for that dimension. Encourage that he make use of various strategies to improve his reading: slow down the speed, seek extra time for tests involving significant elements of reading, read with a pencil/marker in hand to underline key words/phrases and to help keep his place. He may periodically wish to seek/to rely on the classroom notes of others. He may benefit from individualized tutoring in some of his classes. He may benefit from individualized tutoring in a phonics-based approach to reading. He may benefit from training in study skills to help him with classes relaying heavily on reading of materials.

David R. Holmes, PhD

David Holmes, Ph.D.
Licensed Psychologist

**Charis Counseling, LLC**
David R. Holmes, PhD
2620 Stewart Av. , Ste. 310
Wausau, WI 54401
715-848-0525

**Intake Note**

Date of Session: 8/25/2003                Service (CPT): 90801          Session Length:  120 minutes
Type of Visit: Scheduled                  Program: outpatient treatment program
Legal Status: Voluntary

Client: Jenkins, Kirk
Date of Birth: 5/13/1982        Age:  21
Sex: Male
Address:        6605 Peninsula Ln
                Weston, WI  54471-
Phone(H):       715-212-3393

## Identifying Information

The client is a 21 year old male who is presently living on campus. He is attending UW-Madison.  The history was provided by client and prior records.

Chief Complaint/History of Present Illness: Since the last contact with this office, he reported that he has experienced no hospital admissions, no serious injuries or loss of consciousness, and no surgery.  He is taking no medications currently.  He has made use of accommodations at school.  These have proven beneficial in his opinion and he values continued use of them.  His gpa is 3.6 out of 4.0 possible.

The last documentation of LD status was 1999 and his school requires re-evaluation each 3 years.

**Psychosocial History**

## Developmental History

Pregnancy
        Duration: full term
        Duration: full term         [  ] Smoking during pregnancy
        [  ] Alcohol during pregnancy
        [  ] Drugs during pregnancy
        [  ] Medications during pregnancy

Labor
        Delivery: Cesarean
        Birth Weight: 8 lb 15 oz

Milestones

Motor Skills: Walking may have developed early but others WNL.

Language: Language may have developed early by maternal report.

Social Attachment: WNL

**Childhood Medical History**

**Abuse History**

[  ] Physical Abuse        [  ] Rule Out
[  ] Sexual Abuse         [  ] Rule Out
[  ] Emotional/Verbal Abuse
[  ] Abandonment/Neglect

Witness of Abuse
[  ] Witness of Physical Abuse
[  ] Witness of Sexual Abuse

Perpetrator of Abuse
[  ] Perpetrator of Abuse

**Family History**

Mother: Dee Jenkins
        Education: 16
        Occupation: retired teacher

Father: David Jenkins MD
        Education: 21
        Occupation: retired physician

Parents Status: Married        Year:

Siblings: sisters 26 and 29

Family History of:

Other: Client's father had a reported history of LD as did one of client's sisters [EEN services provided in the school].

**Marital History**

Marital Status: Single

**Educational History**

Educational Level: 15
Age 1st Grade: 6
Attended:      [X] pre-school        [X] kindergarten

Type of Placement
[X] Regular Classes
Note: He was in Montessori preschool.  He attended Rothschild Elementary, DC Everest HS.

Adjustment Problems: None

Behavioral Problems: None

Repeated Grades: Denied

Suspensions: Denied

Strengths: He tended to be above grade level in math, near grade level in reading and delayed with spelling.

## Occupational History

Employment Status: Student
Means of Support: Parents

## Substance Use

Nicotine
Use: No

Alcohol
Frequency: not evident

## Symptoms

The client is experiencing impairment in writing skills (3-Moderate), poor spelling skills (3-Moderate) and slow reading speed (4-Severe).

## Mental Status

The client appears stated age. He is well oriented in all spheres. Regarding level of consciousness, he appears alert. Affect is appropriate. Mood is anxious. He presented himself in an appropriate fashion. Eye contact can be described as good. His speech is logical and coherent. Recent memory appears normal. Remote memory is normal. Psychomotor activity can be characterized by normal movements and activity level. Regarding conceptual disorganization, there is none evident. His thought content is characterized by no significant preoccupations. Regarding perceptual functioning, the client denies hallucinations and none are evidenced. Attitude can be described as open and cooperative. As far as insight is concerned, the client verbalizes awareness of problems, consequences, and causes. Judgment is good. Attention/Concentration is characterized by ability to attend and maintain focus. Regarding impulse control the client is reflective and able to resist urges.

## Previous Treatment

Outpatient: D. Holmes, PhD
Dates: 1999
Reason: LD re-evaluation
Outcome: LD documentation

## Strengths/Weaknesses

The client's strengths include capacity for analytic thinking, good ability to establish rapport, good personal hygiene and care in appearance, and interested in relationships with others.

## Psychological Testing

Report Date: 8/25/2003
Examiner: D. Holmes, PhD

Tests Administered: Wechsler Adult Intelligence Scale-III

Results: The WAIS-III is an individually administered test of current intellectual functioning.  It produces a

Full Scale IQ. The FSIQ is the overall summary score estimating one's general level of intellectual functioning. The WAIS-III also yields standard scores based on various composites of subtest scaled scores. These Index scores allow for more specific description of one's particular strengths and weaknesses.

One combination of Index Scores involves the traditional Verbal IQ and Performance IQ. The VIQ is a measure of acquired knowledge, verbal reasoning and attention to verbal materials. The PIQ is a measure of fluid reasoning, spatial processing, attentiveness to detail and visual-motor integration.

Another combination of Index Scores is derived from factor analysis. Factor analysis tries to make more refined, 'purer' measures of specific mental factors. The Verbal-Conceptual Index [VCI] is a measure of verbal acquired knowledge and verbal reasoning. It is similar to the VIQ with the attention/concentration measures removed. The Perceptual-Organizational Index [POI] is a measure of non-verbal, fluid reasoning, attentiveness to detail and visual-motor integration. Quick responding is less important within POI than in the PIQ. The Working Memory Index [WMI] is a measure of attending to information, processing the information in memory and formulating a response. The Processing Speed Index [PSI] is a measure of the individual's ability to process visual information quickly.

| Index | Standard Score | Percentile Rank | Confidence Interval |
|---|---|---|---|
| Verbal IQ | 121 | 92 | 115-125 |
| Performance IQ | 122 | 93 | 114-127 |
| Full Scale IQ | 123 | 94 | 118-127 |
| Verbal Conceptual | 129 | 97 | 122-133 |
| Perceptual Organization | 133 | 99 | 123-138 |
| Working Memory | 106 | 66 | 99-112 |
| Processing Speed | 99 | 47 | 90-108 |

On this administration of the WAIS-III, he attained a Full Scale IQ of 123 which corresponds to the 94th percentile for his age and to the Superior range of current intellectual functioning as defined by Wechsler. The difference between the VIQ and PIQ is not significant nor is that between the Verbal Conceptual Index [VCI] and the Perceptual Organization Index [POI]. The Working Memory Index [WMI] is lower than either the VCI or the POI. Both of these discrepancies are of degrees that infrequently occurred among the normative sample [7.4% and 5.2% respectively]. The Processing Speed Index [PSI] also was significantly lower than either the VCI [at frequency of 1.7%] or the POI [frequency of 4.8%]. The difference between the WMI and PSI is not significant.   Of note, the WMI and PSI have many timed or single presentation tasks. Such conditions are less prominent in the VCI and POI. He showed relative strength on verbal abstraction. He showed relative weakness on span of immediate attention.

The Letter and Category Fluency Test requires one to list within time limits, words starting with specified letters then members of a named category. The task is a measure of verbal fluency but also of executive processing, e.g., picking a strategy and monitoring how one is adhering to the strategy. On both the Letter and the Category parts, he performed at an average level for his age [scaled scores of 10 for each].

Prior test data were available for review from DC Everest School district, dated 01/31/1991 [Michael Gontarz, school psychologist]. WISC-R scores of VIQ = 133, PIQ = 135, FSIQ = 139. 'Short-term auditory memory was a relative weakness for Kirk when compared to his test average/mean.' Kaufman Test of Educational Achievement scores of Math Application = 110, Math Computation = 112, Overall Math = 113, Reading Decoding = 93, Reading Comprehension = 104, Overall Reading = 98, and Spelling = 87.

CBCL data showed no elevations. Teacher reports indicated no behavioral or interpersonal problems.

## Clinical Formulation

Intracognitive discrepancies remain present for this young man with an LD history. He has made use of accommodations at school successfully as demonstrated by his gpa. The nature of the intracognitive discrepancies suggests that extended time allowed on timed tasks is an appropriate intervention. Spelling has historically also been the primary expression of the LD although reading seems impacted when timed.

## DSM-IV Diagnosis

| | |
|---|---|
| Axis I: | 315.90  Learning Disorder NOS (Principal) |
| Axis III: | none |
| Axis IV: | Problems with primary support group: health problems in the family |
| Axis V: | Current GAF = 77 |
| | Highest Past Year = 80 |

## Discharge Criteria

1) Evaluation completed

## Treatment Goals

Treatment Goal #1: Administer WIAT-II
Date Defined: 8/25/2003

Treatment Goal #2: Anticipate forms from client re M-CAT request for accommodations similar to previously with ACT and in High School/College
Date Defined: 8/25/2003

## Treatment Plan

Primary Treatment/Recommendation: Complete the evaluation


Provider Name: Holmes, Ph.D., David
                Wausau, WI 54401
Title: psychologist
License: 848-057

*David Holmes PhD*      8/25/03
Provider Signature        Date

**Charis Counseling, LLC**
David R. Holmes, PhD
2620 Stewart Ave., Ste. 310
Wausau, WI 54401
715-848-0525

**Progress Note**

Date of Session: 9/4/2003          Session #: 2          Service (CPT): 96100
Session Length: 120 minutes
Type of Visit: Scheduled           Program: outpatient treatment program

Client: Jenkins, Kirk
Date of Birth: 5/13/1982          Age: 21
Sex: Male
Address:        6605 Peninsula Ln
                Weston, WI 54471-
Phone(H):       715-212-3393

## DSM-IV Diagnosis

Axis I:        315.90  Learning Disorder NOS (Principal)
Axis III:      none
Axis IV:       Problems with primary support group: health problems in the family
Axis V:        Current GAF = 77
               Highest Past Year = 80

## Symptoms

The client is experiencing impairment in writing skills (3-Moderate), poor spelling skills (3-Moderate) and slow reading speed (4-Severe).

## Session Content

Themes Discussed
        [X] School Problems

Session Content: The WIAT-II is a comprehensive, individually administered battery for measurement of basic academic skills normed by age groups. It has norms for individuals from 5 up to adulthood. It is co-normed with the Wechsler intelligence scales [WISC-III/WAIS-III]. This allows calculation of estimates of ability-achievement discrepancies. The WIAT subtests have been designed to combine two estimates of an achievement area, the combination of which yields a composite score for several achievement domains [Reading, Mathematics, Language Composition, Writing]. The composite scores give a more reliable estimate of one's functioning in the domain. The combination of these composites can yield a Total Composite Score.

| Index | Standard Score | Percentile Rank | Confidence Interval |
|---|---|---|---|
| Word Reading | 94 | 34 | 87-101 |
| Mathematics Reasoning | 110 | 75 | 99-121 |
| Spelling | 87 | 19 | 80-94 |
| Reading Comprehension | 123 | 94 | 116-130 |
| Numerical Operations | 116 | 86 | 108-124 |
| Listening Comprehension | 110 | 75 | 98-122 |
| Oral Expression | 132 | 98 | 117-147 |
| Pseudoword Decoding | 96 | 39 | 90-102 |

| | | | |
|---|---|---|---|
| Reading Composite | 103 | 58 | 98-108 |
| Mathematics Composite | 113 | 81 | 105-121 |
| Written Language Composite | 102 | 55 | 93-111 |
| Oral Language Composite | 128 | 97 | 117-139 |



His reading comprehension score was in the 4th quartile while his reading speed score was in the 1st quartile. This is an atypical combination such that his reading speed is far below average while his comprehension is above average. Such a pattern matches his history, though. Word fluency was in the 3rd quartile [average to above average]. The Target Words score was also in the 4th quartile.

An ability-achievement discrepancy analysis was completed using the predicted differences method. The FSIQ was used as the predictor variable. The table below also indicates the frequency with which a difference of that magnitude occurred in the normative sample. For a discrepancy to be meaningful, it must be both statistically large and infrequently occurring.

| Index | Predicted | Actual | Difference | Significance | Frequency |
|---|---|---|---|---|---|
| Word Reading | 111 | 94 | -17 | 8.17 | 10% |
| Numerical Operations | 113 | 116 | +03 | 9.2 | |
| Reading Comprehension | 113 | 123 | +10 | 8.32 | |
| Spelling | 110 | 87 | -23 | 9.76 | 05% |
| Pseudoword Decoding | 110 | 96 | -14 | 8.12 | 15% |
| Mathematics Reasoning | 115 | 110 | -05 | 11.53 | |
| Listening Comprehension | 115 | 110 | -05 | 14.39 | |
| Written Expression | 109 | 121 | +12 | 18.70 | |
| Oral Expression | 109 | 132 | +23 | 19.47 | |
| | | | | | |
| Reading Composite | 115 | 103 | -12 | 6.47 | 15% |
| Mathematics Composite | 116 | 113 | -03 | 8.63 | |
| Written Language Composite | 111 | 102 | -09 | 11.24 | |
| Oral Language Composite | 114 | 128 | +14 | 13.83 | |
| Total Composite | 116 | 111 | -05 | 6.7 | |

Only the pair-wise comparisons with negative differences merit much consideration, i.e., where he performed lower than he was expected to do. Of passing note though, is apparent strength in some elements of his language functioning [except spelling and basic reading]. Four discrepancies are apparent: Word reading, Pseudoword Decoding, Spelling, and Reading Composite. These are consistent with the weaknesses demonstrated by Kirk both from prior testing and in his actual school performance.

Impressions:
Kirk not only showed intracognitive discrepancy on the WAIS-III but also showed ability-achievement discrepancy compatible with the pattern of intracognitive disrepancy previously noted. The pattern is consistent over time as demonstrated by the prior test results from 1991 and 1999. Any task requiring reading with speed expectations produced his lowest scores. The strength still of his other language functions is encouraging but may also result in others not readily recognizing his LD style. He continues to be in need of accommodations related to the need for longer time for reading and for allowances for the spelling difficulty [spell-checker, spelling dictionary, or not to be graded down for spelling]. If he were to take a timed, nationally normed examination such as GRE or MCAT, he would need extra time to perform optimally.

### Session Characteristics

Motivation: good
Resistance: negligible
Cognitive Focus: able to focus on relevant topic
Cognitive Flexibility: ability to see different perspectives

Affect Expression: able to accurately identify and express feelings
Activity Level: waits for therapist to initiate discussion
Use of Session: makes constructive use of sessions
Treatment Compliance: moderate degree of compliance with treatment

**Interventions**

1) Await request to send data to a yet to be identified organization.
2) Recommendations for accommodations as per above.

Provider Name: Holmes, Ph.D., David
                        Wausau, WI 54401
Title: psychologist
License: 848-057

_David Holmes PHD_                    _9-4-03_
**Provider Signature**                **Date**