IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| KIRK D. JENKINS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | NO. 2:07-CV-263-J |
| | § | |
| NATIONAL BOARD OF | § | |
| MEDICAL EXAMINERS, | § | |
| | § | |
| Defendant. | § | |

**DEFENDANT'S RESPONSE IN
OPPOSITION TO PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION AND BRIEF IN SUPPORT**

RINEY & MAYFIELD LLP
  Thomas C. Riney – TBN 16935100 /
   Attorney in Charge
  Mitzi S. Mayfield – TBN 13284425
  Joni Paul Kleinschmidt – TBN 24037249
600 Maxor Building
320 South Polk Street
Amarillo, Texas 79101
(806) 468-3200; Fax (806) 376-4509

ATTORNEYS FOR DEFENDANT

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................... ii

I.      BACKGROUND ..........................................................................1

II.     ARGUMENTS AND AUTHORITIES.................................................3

        A.   Irreparable Harm ....................................................................4

        B.   Likelihood of Success on Appeal.......................................8

        C.   Hardships and Public Interest.........................................13

III.    CONCLUSION.........................................................................15

CERTIFICATE OF SERVICE ...........................................................16

# TABLE OF AUTHORITIES

## Cases

*Baer v. National Board of Medical Examiners,*
   392 F. Supp. 2d 42 (D. Mass. 2005) .......................................................4, 5, 6, 8, 9, 10, 11, 12

*Black Firefighters Ass'n v. City of Dallas, Tx.,*
   905 F.2d 63 (5th Cir. 1990) ...................................................................................................3

*Exhibitors Postal Exch. Inc. v. National Screen Serv. Cor*p.,
   441 F.2d 560 (5th Cir. 1971) (per curiam) ...........................................................................3

*Harris v. Wilters,*
   596 F.2d 678 (5th Cir. 1979) .............................................................................................3, 4

*Henry v. First National Bank of Clarksdale,*
   595 F.2d 291 (5th Cir. 1979), *cert.denied sub. nom.,* 44 U.S. 1074,
   100 S.Ct. 1020, 62 L. Ed. 2d 756 (1980) ...............................................................................4

*Lewis v. S.S. Baune,*
   534 F.2d 1115 (5th Cir. 1976) ...............................................................................................4

*Massachusetts Coalition of Citizens with Disabilities v. Civil Def. Agency &*
   *Office of Emergency Preparedness,*
   649 F.2d 71 (1st Cir. 1981) ....................................................................................................4

*Miami Beach Federal Savings & Loan Ass'n v. Callander,*
   256 F.2d 410 (5th Cir. 1958) .................................................................................................3

*Pazer v. New York State Bd. of Law Exam'rs,*
   849 F. Supp. 284 (S.D.N.Y. 1994) .........................................................................................6

*Powell v. National Bd. of Med. Exam'rs,*
   364 F.3d 79 (2d Cir. 2004).....................................................................................................14

*Rio Grande Cmty. Health Ctr., Inc. v. Rullan,*
   397 F.3d 56 (1st Cir. 2005) ....................................................................................................4

*San Francisco Real Estate Inv. v. Real Estate Inv. Trust of America,*
   692 F.2d 814 (1st Cir. 1982) ..................................................................................................6

*Singh v. George Washington Univ. School of Medicine and Health Sciences,*
   No. 06-7133, consolidated with 06-7134, 2007 U.S. App. Lexis 27934
   at *16 (D.C. Cir.), Dec. 4, 2007 ......................................................................................10, 12

*State of Texas v. Seatrain Int'l S.A.,*
   518 F.2d 175 (5th Cir. 1975)..................................................................................................3

*Sugar Busters LLC v. Brennan,*
   177 F.3d 258 (5th Cir. 1999)............................................................................................3, 13

*Toyota Motor Manufacturing Kentucky, Inc. v. Williams,*
   534 U.S. 184 (2002)...........................................................................................................9, 12

*Van Arsdel v. Texas A&M Univ.,*
   628 F.2d 344 (5th Cir. 1980).................................................................................................4

*White v. Carlucci,*
   862 F.2d 1209 (5th Cir. 1989)...............................................................................................4

*Wong v. Regents of the Univ. of Cal.,*
   410 F.3d 1052 (9th Cir. 2005)...............................................................................10, 11, 12

**Statutes**

42 U.S.C. § 12101(a)(1) .........................................................................................9

42 U.S.C. § 12102(2) ...........................................................................................8

42 U.S.C. §§ 12131-12132....................................................................................8

42 U.S.C. § 12189 ................................................................................................5

Massachusetts Public Accommodation Statute,
     Mass. Gen. Laws, Ch. 272, § 98 ..............................................................5

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| KIRK D. JENKINS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | NO. 2:07-CV-263-J |
| | § | |
| NATIONAL BOARD OF | § | |
| MEDICAL EXAMINERS, | § | |
| | § | |
| Defendant. | § | |

## DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND BRIEF IN SUPPORT

Defendant, NATIONAL BOARD OF MEDICAL EXAMINERS ("NBME" or "Defendant"), files this Response in Opposition to Plaintiff's Motion for Preliminary Injunction and Brief in Support, subject to Defendant's Motion for Change of Venue.

## I.

### BACKGROUND

The United States Medical Licensing Examination™ ("USMLE") is an examination relied upon by the medical licensing boards of all 50 states and the territories of the United States as evidence of the competency of individuals who aspire to become physicians. Defendant, together with the Federation of State Medical Boards, develops the USMLE and is responsible for insuring that the USMLE effectively and impartially tests the qualifications and competency of individuals seeking medical licensure. As a screening process for physicians, the USMLE tests the minimum knowledge required to be a physician, and therefore the integrity of the examination is essential. To preserve the

integrity of the USMLE and in fairness to all examinees, it is administered under standardized conditions, particularly with respect to the timing of the examination.

The Step 1 examination of the USMLE is offered five to six days per week, 50 weeks a year, at hundreds of computer test centers throughout the US and abroad. *See* Affidavit of Susan Deitch, p. 3. Each year, the USMLE program issues a Bulletin of Information explaining in detail all aspects of the USMLE, including the application process and score reporting. *Id.* at p. 4. As part of the application process, examinees certify they have read the current Bulletin of Information and application instructions, are familiar with their contents, and agree to abide by the policies and procedures described there. *Id.* Jenkins completed the certification as part of his November 26, 2006 and November 13, 2007 applications to take Step 1 of the USMLE. *Id.* at pp. 4-5. *See also* Exhibits "A," "B," and "C" attached to the Affidavit of Susan Deitch.

Plaintiff, KIRK D. JENKINS ("Plaintiff"), is a medical student at the University of Louisville School of Medicine. Plaintiff has completed the second year of instruction at the University of Louisville School of Medicine. *See* Original Complaint for Emergency Injunctive Relief and Demand for Jury Trial, page 2. Plaintiff is scheduled to take Step 1 of the USMLE on December 18, 2007, in Amarillo, Texas, and seeks preliminary mandatory injunctive relief from this Court, compelling the Defendant to provide him an accommodation of one and one-half times the standard time provided for taking Step 1 of the USMLE.

## II.

### <u>ARGUMENTS AND AUTHORITIES</u>

A preliminary injunction is an extraordinary equitable remedy that may be granted only if a plaintiff establishes the following four elements:

A. A substantial likelihood of success on the merits;

B. A substantial threat that plaintiff will suffer irreparable injury if the injunction is denied;

C. That the threatened injury outweighs any damage that the injunction might cause defendant; and

D. That the injunction will not disserve the public interests.

*Sugar Busters LLC v. Brennan*, 177 F.3d 258, 265 (5th Cir. 1999).  The decision to grant a preliminary injunction is to be treated as the exception rather than the rule.  *State of Texas v. Seatrain Int'l S.A.*, 518 F.2d 175, 179 (5th Cir. 1975).  Plaintiff carries the burden of proving all four factors.  *Black Firefighters Ass'n v. City of Dallas, Tx.*, 905 F.2d 63, 65 (5th Cir. 1990).

Mandatory preliminary relief which goes well beyond simply maintaining the status quo *pendente elite* is particularly disfavored and should not be issued unless the facts and law clearly favor the moving party.  *Exhibitors Postal Exch., Inc. v. National Screen Serv. Corp.*, 441 F.2d 560, 561-62 (5th Cir. 1971) (per curiam); *Miami Beach Federal Savings & Loan Ass'n v. Callander*, 256 F.2d 410, 415 (5th Cir. 1958).  Only in rare instances is the issuance of a mandatory preliminary injunction proper.  *Harris v. Wilters*, 596 F.2d 678, 680 (5th Cir. 1979).  If Plaintiff fails to establish any one of the four elements, the preliminary injunction must be denied.  *Black Firefighters Ass'n v. City of Dallas, Tx.*, 905 F.2d at 65.

A.     **Irreparable Harm**

An indispensable prerequisite to issuing a preliminary injunction is prevention of irreparable injury. *Van Arsdel v. Texas A&M Univ.*, 628 F.2d 344, 346 (5th Cir. 1980); *Harris v. Wilters*, 596 F.2d at 680; *Henry v. First National Bank of Clarksdale*, 595 F.2d 291, 302 (5th Cir. 1979), *cert. denied sub. nom.*, 44 U.S. 1074, 100 S. Ct. 1020, 62 L. Ed. 2d 756 (1980); *Lewis v. S.S. Baune*, 534 F.2d 1115, 1121 (5th Cir. 1976). The irreparable harm element must be satisfied by independent proof or no injunction may issue. *White v. Carlucci*, 862 F.2d 1209, 1211 (5th Cir. 1989). "'Irreparable injury' in the preliminary injunction context means an injury that cannot adequately be compensated for either by a later-issued permanent injunction after a full adjudication on the merits, or by a later-issued damages remedy." *Baer v. National Board of Medical Examiners*, 392 F. Supp. 2d 42, 48 (D. Mass. 2005), citing *Rio Grande Cmty. Health Ctr., Inc. v. Rullan*, 397 F.3d 56, 76 (1st Cir. 2005). *See also Massachusetts Coalition of Citizens with Disabilities v. Civil Def. Agency & Office of Emergency Preparedness*, 649 F.2d 71, 74 (1st Cir. 1981). Plaintiff requests this Court grant preliminary injunctive relief for the following reasons, as stated in the Complaint and Motion for Preliminary Injunction:

1.     Jenkins' medical school career will be placed on hold because he must obtain a passing score on the USMLE Step 1 to continue his medical school education;

2.     Jenkins is concerned he will not pass the USMLE Step 1 without the additional time accommodation;

3.     Jenkins' opportunity to "engage in his career of choice is effectively on hold;"

4.      Jenkins is unable to continue the same pace of his medical school career as his peers;

5.      Taking the USMLE Step 1 without extra time puts Jenkins at a "distinct disadvantage;"

6.      Not receiving extra time significantly reduces Jenkins' future residency and professional career options; and

7.      Jenkins faces future expulsion from the University of Louisville School of Medicine if he fails to pass the USMLE Step 1 in a timely manner.

None of these constitute a showing of irreparable harm.

This case is substantially similar to the case of *Baer v. National Board of Medical Examiners* decided by the United States District Court for the District of Massachusetts by order dated May 3, 2005.  *See Baer*, 392 F. Supp. 2d 42.  In *Baer*, plaintiff Heidi A. Baer, a medical student at Drexel University College of Medicine, sought a preliminary injunction ordering the National Board of Medical Examiners to award her extended time to take Step 1 of the USMLE.  *Id.* at 44.  She alleged that the defendant's refusal to accommodate her request for an administration that was one and one-half times the length of the standard test violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12189, as well as the Massachusetts Public Accommodation Statute, Mass. Gen. Laws, Ch. 272, § 98.  *Baer*, 392 F. Supp. 2d at 44.  Baer claimed that, unless she was allowed extra time, she would likely fail the examination and consequently would be dismissed from medical school.  Baer's motion for preliminary injunction was denied. *Id.* at 49.

The District Court for the District of Massachusetts determined that Baer failed to demonstrate that she would suffer irreparable harm absent a preliminary injunction.  The court found that the alleged harm was speculative, as it was not certain she would fail the

test. *Id.* Moreover, the court determined that the possibility that Baer might fail and therefore be unable to continue as a medical student without interruption at Drexel was not a harm that was irreparable to Baer's potential medical career. *Id.*

Additionally, the court determined that Baer's alleged harm was not necessarily imminent. *Id.* Baer was eligible to take Step 1 at any time between May 1, 2005, and July 31, 2005. She selected May 5, 2005, as her test date. Baer alleged she needed a passing score on Step 1 to enroll in an internship program required of third-year medical students at Drexel which began on July 4, 2005. *Id.* at 44. In November, 2004, Baer had applied for additional time on her fourth attempt at Step 1. On January 14, 2005, the National Board of Medical Examiners denied her request for an accommodation. *Id.* at 45. On April 12, 2005, Baer filed an action in federal district court seeking a preliminary injunction, only three weeks before her scheduled test date, yet three months after the National Board of Medical Examiners denied her fourth request for an accommodation. The alleged urgency of the petition, according to the Massachusetts District Court, was self-inflicted. *Id.* at 49. *See also San Francisco Real Estate Inv. v. Real Estate Inv. Trust of America*, 692 F.2d 814, 818 (1st Cir. 1982); *Pazer v. New York State Bd. of Law Exam'rs*, 849 F. Supp. 284, 287-88 (S.D.N.Y. 1994).

Similarly, Mr. Jenkins' slowness in filing this action after receiving the National Board of Medical Examiners' second denial letter in August 2007 is unexplained: any time constraint he allegedly faces is self-inflicted. *See Baer*, 392 F. Supp. 2d at 49. Indeed, he filed this action less than two weeks before his own chosen testing date. Specifically, the relevant dates are as follows:

- 11/26/2006   Jenkins applies to take Step 1 and requests June-July-August, 2007 eligibility.

- 12/05/2006   National Board of Medical Examiners receives Jenkins' request for accommodation of additional time on Step 1 of the USMLE.

- 12/07/2006   National Board of Medical Examiners reviews documentation submitted, finds it insufficient, and sends letter to Jenkins requesting additional documentation.

- 02/26/2007   National Board of Medical Examiners receives additional documentation and updated personal statement from Jenkins.

- 04/30/2007   National Board of Medical Examiners receives report from its consultant who recommends denial of Jenkins' requested accommodation.

- 05/18/2007   National Board of Medical Examiners sends Jenkins a letter denying his request for accommodation.

- 07/16/2007   Jenkins extends his eligibility to September-October-November, 2007.

- 07/19/2007   National Board of Medical Examiners receives letter from Jenkins requesting reconsideration and providing supplemental documentation.

- 08/06/2007   National Board of Medical Examiners receives report from its consultant who recommends denial of the request for extra testing time.

- 08/29/2007   National Board of Medical Examiners sends letter to Jenkins denying the reconsideration for extra time.

- 10/27/2007   Jenkins schedules to test on 11-29-07 in Amarillo, Texas

- 11/13/2007   Jenkins re-registers for Step 1 with an eligibility period of December, 2007 through February, 2008.

- 12/05/2007    Jenkins files his Original Complaint for Emergency Injunctive Relief and Demand for Jury Trial.

- 12/07/2007    Jenkins files a Motion for Preliminary Injunction.

As early as August 29, 2007, Jenkins was aware that his reapplication for testing accommodation had been denied by the National Board of Medical Examiners. Yet, Jenkins did not seek relief from this Court until December 5, 2007 – less than two weeks before his own chosen testing date. Therefore, Plaintiff has failed to show irreparable harm.

Plaintiff has failed to demonstrate the element of irreparable harm by independent proof. Therefore, Plaintiff's Motion for Preliminary Mandatory Injunction should be denied.

**B.    <u>Likelihood of Success on the Merits</u>**

The basis of Plaintiff's claims is that he is "disabled" within the meaning of the ADA, which prohibits discrimination on the basis of disability. He bears the initial burden of showing that he is likely to succeed in establishing that essential proposition. *Baer*, 392 F.Supp.2d at 46. 42 U.S.C. §§ 12131-12132. The ADA defines a disability as:

A physical or mental impairment that substantially limits one or more of the major life activities of such individual;

42 U.S.C. § 12102(2).

The United States Supreme Court declared in a unanimous decision that the terms of the statutory definition of disability "need to be interpreted strictly to create a

demanding standard for qualifying as disabled." *Toyota Motor Manufacturing Kentucky, Inc. vs. Williams*, 534 U.S. 184, 197 (2002). In *Toyota,* the Court stated that to "qualify as disabled, a claimant must . . . show that the limitation on the major life activity is 'substantial.'" *Id.* at 195. The Court noted that the word "substantially" in the phrase "substantially limits" suggests "considerable" or "to a large degree." *Id.* at 196. "The word 'substantial' thus clearly precludes impairments that interfere in only a minor way. . . from qualifying as disabilities." *Id.* Similarly, the Court stated that the word "major" in the phrase "major life activities" means important. . . . "Major life activities" thus refers to those activities that are of central importance to daily life." *Id.* The court in *Toyota* referred to the Congressional purposes stated in the ADA and noted that "[i]f Congress intended everyone with a[n] . . . impairment that precluded the performance of some isolated, unimportant, or particularly difficult . . . task to qualify as disabled, the number of disabled Americans would surely have been much higher" than the figure stated at 42 U.S.C. § 12101(a)(1). *Toyota, 534 U.S. at 197.*

It is insufficient for individuals attempting to prove disability merely to submit evidence of a medical diagnosis of an impairment. *Id.* at 198. Instead, the ADA requires those "claiming the Act's protection . . . to prove a disability by offering evidence that the extent of the limitation [caused by their impairment] in terms of their own experience . . . is substantial." *Id.*

In the *Baer* case, discussed *supra,* Baer failed to carry her burden of showing that she was likely to succeed in establishing her disability under the ADA. The court stated that "while Baer has shown that she likely suffers from some weakness or impairment

that adversely affects her ability to read, comprehend and process written material quickly, she has not shown that she is likely to succeed in demonstrating that her impairment has such a severe impact on her that it can properly be regarded as 'substantially limiting' her in a 'major life activity' so as to amount to a 'disability' for which the ADA provides remedial protection." *Baer*, 392 F.Supp.2d 42 at 46. There is a difference between what a psychologist may mean when he or she uses the term "disability" and what the ADA means when it uses that term. *Id.* It is possible for a person to be diagnosed by a psychologist as having a "learning disability" and yet not have a "disability" within the meaning of the ADA, particularly if the relatively weak performance is still in the "average" range, like Plaintiff's. *Id.* Moreover, an individual's record of poor performance on exams might also be attributable to numerous factors other than a disability, such as anxiety, stress, nervousness, cautiousness, poor organization, poor time management, lack of motivation, lack of appropriate preparation or weakness in a particular subject matter. *Id.* at 47.

"Major life activities" typically include functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working. *Id.* Test taking is not a major life activity or "a crucial component" of a major life activity. *Singh v. George Washington Univ. School of Medicine and Health Sciences*, No. 06-7133, consolidated with 06-7134, 2007 U.S. App. Lexis 27934 at *16 (D.C. Cir.), Dec. 4, 2007.

In *Wong v. Regents of the Univ. of Cal.*, 410 F.3d 1052 (9th Cir. 2005), a medical student was dismissed by the university after his performance was deemed unsatisfactory

and he received a failing grade. Wong filed a claim alleging that the University of California had discriminated against him in violation of the ADA when it denied his request for learning disability accommodations and subsequently dismissed him from medical school. The district court granted the University's motion for summary judgment and Wong appealed. The court of appeals focused on the issue of whether Wong offered sufficient evidence that his impairment *substantially limited* him in a major life activity. *Id.*. Wong did not claim that he could not read but rather, that as a result of his learning disability, he read very slowly and often had to reread material several times. *Id.* at 1066. He cited evidence of his poor performance reading *under time constraints*. *Id.* Wong essentially argued that he read slowly especially when compared to his own reading comprehension ability without time limits or to that of others in his academic peer group. *Id.*

The 9th Circuit concluded that he did not present evidence or argue that he was substantially limited in his ability to read for purposes of daily living or as compared to what is important in the daily life of most people. *Id.* For example, he did not establish that he was unable to read newspapers, government forms, street signs or the like. *Id.* at 1066-67.

"Substantially limits" means "significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner or duration under which the average person in the general population can perform that same major life activity." *Baer*, 392 F.Supp. 2d at 47. With respect to an impairment that affects the major life activity of learning, the

impairment must limit learning generally.   *Id.*   An impairment that interferes with an individual's ability to perform a particular function such as test-taking but does not significantly decrease that individual's ability to obtain a satisfactory education otherwise, does not substantially limit the major life activity of learning.   *Id.* at 47-48.

Just a few days ago, the D.C. Circuit Court of Appeals issued an opinion applying the *Toyota* standard to the claim of a medical student who was dismissed from George Washington University and who argued that the University violated the ADA by failing to accommodate his alleged learning disabilities.   The DC Circuit cited the *Wong* decision for its test of whether a plaintiff's impairment substantially limited his ability to learn as a whole for purposes of daily living as compared to most people, not whether he could keep up with a rigorous medical school curriculum.   *Singh*, 2007 U.S. App. Lexis 27934 at *6.   The DC Circuit stated that a plaintiff, who, despite an impairment, can participate in all major life activities at the level of the average person in the general population neither is denied "independent living and economic self-sufficiency" nor burdens society with "dependency and non-productivity" nor fails within the kind of "isolated and segregated minority described by the statute's text.   *Id.* at *9.   The ADA promotes equal opportunity for the disabled but only after *Toyota's* demanding standard is met.   *Id.* at *10.

The NBME grants accommodations to individuals who qualify as disabled under the ADA, thus providing equal access to the USMLE testing program. Providing extra time to an individual who is <u>not</u> disabled is unfair to other examinees, with and without disabilities.   It is also unfair to state licensing authorities who expect USMLE to be

administered under standard conditions.   While Mr. Jenkins may not be a fast or very fluent reader, his documentation does not support a finding that he is substantially limited in a major life activity. At most, his reading problems may be described as mild. Mr. Jenkins' claim of mental impairment based on poor exam performance under time constraints does not demonstrate that he is substantially limited in his ability to read for purposes of daily living or as compared to what is important in the daily life of most people. In sum, Mr. Jenkins' alleged impairment does not rise to the level of a disability for purposes of the ADA. Applicable law supports Defendant's decision that the requested accommodation of time and one-half to complete the Step 1 exam must be denied, and requires a finding that Plaintiff's request for injunctive relief must be denied.

## C.     **Hardships and Public Interest**

Finally, Plaintiff cannot show the third and fourth elements required for issuance of a preliminary injunction:  that the balancing of hardships favors the issuance of the injunction and that the issuance of the injunction will not be contrary to public interest. *See Sugar Busters*, 177 F.3d at 265.  Despite Plaintiff's attempts to minimize the impact of granting a preliminary injunction, it is clear that granting Plaintiff's motion would be contrary to the public interest and detrimental to the NBME, to other test-takers and to state licensing authorities.

The NBME is responsible for ensuring the integrity of the scores of the examinations used throughout the United States for medical licensure.  Thus, the NBME must take care that the examinations are administered under standard conditions and that no examinee or group of examinees receives an unfair advantage.   Defendant has

developed an extensive, standardized system for evaluating and granting requests for accommodations. *See Powell v. National Bd. of Med. Exam'rs*, 364 F.3d 79, 88-89 (2d Cir. 2004). If Defendant were to extend accommodations to examinees who have not established by the requisite clinical, psychometric, and historical data that they are disabled under the ADA, the integrity of the licensing examination would be called into question, as would the entire testing process. "As administration of the national exam used by a number of states for licensing medical doctors, the National Board has a duty to ensure that its examination is fairly administered to all those taking it." *Powell*, 364 F.3d at 88-89.

The objective of Defendant's testing is different from the MCAT or medical school tests, which assess performance as a medical student, not a physician. The public relies on and expects the licensing process to be fair, equal, and rigorous. In addition, other individuals who take the examination would be harmed by giving an unfair advantage to Plaintiff. The accommodation sought here also disadvantages those with real disabilities by again creating an uneven playing field. In addition, depending on his score, it may unfairly give Plaintiff an opportunity for a better residency than a similarly situated, unaccommodated student.

Issuing a preliminary injunction in this case potentially endangers the public and thus is contrary to the public interest. The public has the right to expect that licensed medical doctors are qualified to treat them. Accordingly, the public interest requires the objective, fair, and standardized testing of those who seek to become licensed physicians.

Refusing to grant injunctive relief will not irreparably injure Plaintiff, but granting injunctive relief may cause irreparable injury to members of the public and will also

cause injury to Defendant and to the other individuals taking the examination. Accordingly, based on the equities and the public interest, the preliminary injunction should be denied.

## III.

### CONCLUSION

Mandatory preliminary relief should not be issued unless the facts and law clearly favor the moving party. Such is not the case here. Plaintiff has failed to carry the burden on all four required elements. All relief requested relief should be denied.

Respectfully submitted,

RINEY & MAYFIELD LLP
  Thomas C. Riney – TBN 16935100 /
    Attorney in Charge
  Mitzi S. Mayfield – TBN 13284425
  Joni Paul Kleinschmidt – TBN 24037249
600 Maxor Building
320 South Polk Street
Amarillo, Texas 79101
(806) 468-3200; Fax (806) 376-4509


/s/    Thomas C. Riney
      Texas Bar No. 16935100

ATTORNEYS FOR DEFENDANT, NATIONAL BOARD OF MEDICAL EXAMINERS

## CERTIFICATE OF SERVICE

I hereby certify that on the 12th day of December, 2007, I electronically filed ***Defendant's Response in Opposition to Plaintiff's Motion for Preliminary Injunction and Brief in Support*** with the Clerk of Court for the United States District Court, Northern District of Texas, Amarillo Division, using the electronic case filing system of the Court.  The electronic case filing system sent a "Notice of Electronic filing" to the following attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means:

> Mr. Vincent E. Nowak
> MULLIN HOARD & BOARD
> 500 South Taylor, Suite 800, LB 213
> Amarillo, Texas  79101

/s/   Thomas C. Riney